In re Dannie W. McMULLEN d/b/a Mac's Construction d/b/a Lapeer Area Softball d/b/a Good Times Softball and Cheryl J. McMullen, Debtors.

Bankruptcy No. 91–21309.

United States Bankruptcy Court, E.D. Michigan, Southern Division—Flint.

Nov. 9, 1995.

Daniel G. Van Norman, for Debtor.

Edward Olson, for Lapeer County Prosecuting Attorney.

## OPINION REGARDING MOTION FOR INJUNCTION

ARTHUR J. SPECTOR, Bankruptcy Judge.

### INTRODUCTION

On June 19, 1991, Dannie McMullen entered into an agreement with John and Lavonne Burgess, pursuant to which McMullen was to make certain improvements to the Burgesses' home. One of the suppliers utilized by McMullen in connection with the performance of this agreement was Lapeer County Cooperative, Inc. (the "co-op"). The co-op was not fully paid and, when McMullen and his wife filed a joint petition for chapter 7 bankruptcy relief on October 1, 1991, they listed it as holding an unsecured nonpriority claim of $6,500.00.

The deadline for filing a complaint under § 523(c)[1] (alleging that a debt is excepted

from the discharge) or § 727(a) (asserting that the discharge should be denied) was set for December 30, 1991. The co-op did not commence an action under either of these provisions, although it did file a timely proof of claim against the estate for the sum of $6,462.55. The trustee determined that no assets were available for distribution to creditors and, on January 3, 1992, the McMullens were granted a discharge. Three days later, the case was closed.

On September 20, 1994, Mr. McMullen (the "Debtor") filed a motion asking that the Court hold a hearing at which various named persons be ordered to appear to "Show Cause why they should not be held in contempt of Court for their deliberate disregard" of the injunction arising from the discharge by virtue of § 524(a). Debtor's Motion for Order to Show Cause at p. 4. According to the motion, the parties identified each had a role in criminal proceedings brought against the Debtor that were simply "a ruse for collecting" the discharged debt owed to the co-op. *Id.* at ¶ 7.

The case was re-opened, and a hearing on the Debtor's motion was held. After considering the testimony and legal arguments presented at that hearing, I denied the motion in part, but granted it insofar as it related to two individuals, Justus C. Scott and Byron Konschuh. Accordingly, I ordered that Scott and Konschuh, in their capacities as Lapeer County Prosecuting Attorney and Chief Assistant Prosecuting Attorney, respectively, appear "and Show Cause why the Office of the Lapeer County Prosecuting Attorney should not be enjoined from further Prosecution of" the case against the Debtor pending in 40th Circuit Court. For the reasons which follow, the Debtor's request for relief will be denied.

### DISCUSSION

The discharge of a debt "operates as an injunction against the commencement or continuation of an action ... or an act, to collect [or] recover ... such debt as a personal liability of the debtor." 11 U.S.C. § 101 *et seq.*

---

1. Except where otherwise specified, statutory references are to the Bankruptcy Code, 11 U.S.C.

§ 524(a)(2). The state-court action alleges that the Debtor violated section 2 of the Michigan Building Contract Fund Act, Mich. Comp.Laws § 570.151 *et seq.*, which states in pertinent part that a building "contractor ... who, with intent to defraud, shall retain or use the proceeds or any part thereof, of any [construction project] payment made to him, for any other purpose than to first pay [his] laborers, subcontractors and materialmen ..., shall be guilty of [a] felony." Mich. Comp.Laws § 570.152. The Debtor argued that in filing and prosecuting criminal charges against him, the Prosecutor's true motive is to force him to repay the co-op debt, and that the prosecution is therefore contrary to § 524(a)(2).

■ Since the issue here is whether the prosecution is prohibited by the already existing discharge injunction, it technically would be more accurate to characterize the relief sought by the Debtor as declaratory rather than injunctive. From a practical standpoint, however, a determination that the prosecution is contrary to § 524(a)(2) would be tantamount to issuing an injunction. *See Samuels v. Mackell,* 401 U.S. 66, 69–73, 91 S.Ct. 764, 766–68, 27 L.Ed.2d 688 (1971). I therefore treat the motion as in effect seeking an injunction against the Prosecutor.

■ It is not altogether clear whether I have the authority to grant the relief requested and, if so, what criteria must be established in connection with such a request. As explained in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the doctrine often described as

'Our Federalism' ... represent[s] ... a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44, 91 S.Ct. at 750–51. In keeping with the doctrine, "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* at 45, 91 S.Ct. at 751.

This latter aspect of the Federalism doctrine is reflected in the so-called "anti-injunction" statute, which states:

A court of the United States may not grant an injunction to stay proceedings in a State court except as [1] expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments.

28 U.S.C. § 2283.

■ The three exceptions specified in this statute define the circumstances under which state court proceedings can properly be enjoined. *See Younger,* 401 U.S. at 43, 91 S.Ct. at 750. In addition to these statutory exceptions, there is also "a judicial exception" to the general rule that "state courts [are allowed] to try state cases free from interference by federal courts." *Id.* This judicial exception is made "where a person about to be prosecuted in a state court can show that he will, if the proceeding in the state court is not enjoined, suffer irreparable damages." *Id. See also id.* at 43–44, 91 S.Ct. at 750 ("[C]ourts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.").

Some courts hold or suggest that the *Younger* abstention criteria—i.e., the absence of an "adequate remedy at law" and the prospect of "irreparable injury"—need be satisfied only if the injunctive relief is not based on one of the three statutory exceptions. *See Howard v. Allard,* 122 B.R. 696, 700–01 (W.D.Ky.1991); *In re Brinkman,* 123 B.R. 318, 321 (Bankr.D.Minn.1991). Others cases support the proposition that these criteria must be met regardless of whether the applicable exception to the anti-injunction policy is statutory or judicial. *See, e.g., In re Davis,* 691 F.2d 176, 178 (3d Cir.1982); *Barnette v. Evans,* 673 F.2d 1250, 1252 (11th Cir.1982); *In re Berg,* 172 B.R. 894, 897 (Bankr.E.D.Wis.1994).

Further clouding the picture is the more fundamental question of whether 28 U.S.C. § 2283 even applies to bankruptcy courts.

That statute refers to "court[s] of the United States," a term which is defined to

include[ ] the Supreme Court of the United States, courts of appeals, district courts ..., including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

28 U.S.C. § 451. Courts are split on whether the foregoing definition is sufficiently broad to encompass bankruptcy courts. *Compare e.g., In re Courtesy Inns,* 40 F.3d 1084, 1086 (10th Cir.1994); *In re Perroton,* 958 F.2d 889, 890–96 (9th Cir.1992); *In re Davis,* 899 F.2d 1136, 1138–40 (11th Cir.), *cert. denied,* 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *Regensteiner Printing Co. v. Graphic Color Corp.,* 142 B.R. 815, 818 (N.D.Ill.1992) (Aspen, J.); *In re Lauber,* 179 B.R. 712, 715 (Bankr.M.D.Fla.1995); *In re Ennis,* 178 B.R. 192, 196–97 (Bankr.W.D.Mo. 1995) (bankruptcy courts are not "courts of the United States") *with In re Volpert,* 186 B.R. 240, 245 (N.D.Ill.1995) (Leinenweber, J.); *In re Lindsey,* 178 B.R. 895, 900 n. 2 (Bankr.N.D.Ga.1995); *In re Brooks,* 175 B.R. 409, 412–13 (Bankr.S.D.Ala.1994) (bankruptcy courts *are* "courts of the United States").[2]

In this case, neither of the parties fully addressed the question of whether I can enjoin the Prosecutor, or whether I am bound under *Younger* to make a finding of inadequate remedy/irreparable harm before doing so. Even if those issues are resolved in the Debtor's favor, however, his motion must still be denied. Accordingly, I assume without deciding that I have the authority under § 524(a) to grant the injunctive relief requested, and I also do not decide whether *Younger* applies here. *See In re Trevarrow Lanes,* 183 B.R. 475, 488 (Bankr.E.D.Mich. 1995) ("Because the issue was not briefed, and because its resolution will have no impact on the ultimate disposition of this case, I abstain from deciding the merits of this part of the IRS' objection.").

■ Section § 524(a)(2) is of course directed at private debt-collection activities.

*See, e.g., In re Atkins,* 176 B.R. 998, 1006–07 (Bankr.D.Minn.1994); *In re Miller,* 81 B.R. 669, 671, 16 B.C.D. 1187, 19 C.B.C.2d 712 (Bankr.M.D.Fla.1988). But there are circumstances under which criminal prosecution would also violate the statute. An obvious example is if the alleged "crime" is in substance merely the failure to pay the debt in question. *See In re Kilpatrick,* 160 B.R. 560, 570 (Bankr.E.D.Mich.1993) (States cannot "criminalize a debtor's refusal to honor an obligation that constitutes a [dischargeable] claim under federal bankruptcy law."); *cf. In re Roussin,* 95 B.R. 270, 275 (Bankr.D.N.H. 1988) ("Any circumstances regarding criminal contempt ... must take into account an individual's legal right to file bankruptcy. The bankruptcy petition ... cannot be a ground, by itself, for a charge of criminal contempt."). To insure that he does not run afoul of § 524(a), then, the Prosecutor must allege something more than the fact the Debtor failed to pay the co-op debt.

■ No real purpose would be served in attempting to generically define what that "something more" must be. It suffices to note that Mich.Comp.Laws § 570.152's requirement of an "intent to defraud" clearly fits the bill because it targets conduct which is inherently reprehensible and which distinguishes the co-op debt from "ordinary" debts. *Cf. In re Salecki,* 51 B.R. 364, 368 (Bankr.E.D.Va.1985) ("[T]he purpose of the [Virginia] statute[, which is similar to Mich. Comp.Laws § 570.152, is] not for collection of the debt but punishment for the fraud."); *In re Wilson,* 30 B.R. 91, 97, 10 B.C.D. 828 (Bankr.E.D.Tenn.1983) (to like effect with respect to Tennessee's version of the building contract fund act). These characteristics eliminate conflict between state law and the Code. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Pts. I and II, Letter of Transmittal at p. 2 (1973) (describing "relie[f for] the *honest but unfortunate debtor* from the weight of op-

---

**2.** Somewhat surprisingly, the judges rendering the decisions in *Lauber* and *Lindsey* did not cite *Davis,* which seemingly had settled the issue in the Eleventh Circuit. More surprisingly, *Brooks* acknowledged *Davis,* but implicitly assumed without explanation that that case was non-binding. *See Brooks,* 175 B.R. at 411–12.

pressive indebtedness" as one of "the objectives of this system" (emphasis added)).

As indicated earlier, however, the Debtor's theory in invoking § 524(a)(2) targets the Prosecutor's motives for prosecuting, rather than the criminal statute itself. A review of the Supreme Court's decision in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) will serve to clarify the underpinnings of this argument.

The statute at issue in *Kelly* was § 523(a)(7), which excepts from discharge "any debt—(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7). The Court ruled that pursuant to this provision, with respect to which there is no deadline for filing a complaint, criminal restitution obligations are nondischargeable. *Kelly,* 479 U.S. at 50–52, 107 S.Ct. at 361–62. It explained as follows:

> The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole, Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution.... Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State. Similarly, they are not assessed "for ... compensation" of the victim. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).

*Id.* at 52–53, 107 S.Ct. at 362–63 (footnote omitted). *See also id.* at 49, 107 S.Ct. at 360 (Making restitution orders dischargeable "would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems."); *id.* at 49 n. 10, 107 S.Ct. at 360–61 n. 10 ("Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused.").

The essence of the distinction drawn by the Court in *Kelly* between civil debts and restitution is that the latter comprises punitive, rehabilitative and deterrent components which the former lacks. Thus the Prosecutor is arguably violating the discharge injunction if the prosecution of the Debtor has some purpose other than to deter crime or to punish or rehabilitate the Debtor for his alleged fraud. *Cf., e.g., In re Brown,* 39 B.R. 820, 824, 11 B.C.D. 1048, 10 C.B.C.2d 1098 (Bankr.M.D.Tenn.1984) ("[T]he proof clearly establishes that no motive of punishment or rehabilitation supports this order of restitution."); *In re Kaping,* 13 B.R. 621, 623, 8 B.C.D. 16, 4 C.B.C.2d 1529 (Bankr.D.Or. 1981) ("[I]f it appears that the principal motivation is not punishment or prevention but to recover a dischargeable debt ..., the bankruptcy court may enjoin criminal prosecution."); *Roussin,* 95 B.R. at 275 ("[A] true criminal proceeding in the 'pro bono publico' sense is not affected by [a] bankruptcy proceeding involving [a] criminal defendant.... [A] true criminal proceeding [is] not an indirect effort to force a repayment of a dischargeable debt."). It is in this sense that I will use the term "bad faith."

■ Next to consider is whether it should be incumbent on the Debtor to prove that the prosecution is in bad faith, or whether the Prosecutor should instead be required to establish his good faith. In this regard, it bears emphasizing that the law presumes that public officials conduct themselves in good faith. *See, e.g., Linan–Faye Construction Co. v. Housing Authority of the City of Camden,* 49 F.3d 915, 924 (3d Cir.1995); *Hoffman v. United States,* 894 F.2d 380, 385 (Fed.Cir.1990); *see also* 31A C.J.S., *Evidence*

§ 126 (1995) ("It is presumed that all persons act in good faith.... [B]ad faith will not be presumed but must be proved."). Consistent with this rule, as well as with the Federalism concept underlying *Younger, supra* p. 404, courts routinely assign the burden of proof to the party seeking injunctive relief when the issue of bad faith on the part of the state-court prosecutor is raised in this or other contexts. *See, e.g., Davis,* 691 F.2d at 179–80 (prosecution relating to a debt discharged in bankruptcy); *In re Scott,* 166 B.R. 779, 783–85 (D.Mass.1994) (same); *see also, e.g., Younger,* 401 U.S. at 54, 91 S.Ct. at 755 (state statute prohibiting "syndicalism" claimed to be contrary to the First and Fourteenth Amendments); *United States v. Mullins,* 22 F.3d 1365, 1373 (6th Cir.1994) (allegation of selective prosecution based on political association); *Fitzgerald v. Peek,* 636 F.2d 943, 945 (5th Cir.), *cert. denied,* 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981) (per curiam) (prosecution alleged to be in retaliation for criticism of local officials); *Turner v. LaBelle,* 251 F.Supp. 443, 447 (D.Conn.1966) (allegation that prosecution was designed to "discourage civil rights activity"). Accordingly, the Debtor must prove that the prosecution is in bad faith. *See also Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 677, 27 L.Ed.2d 701 (1971) ("Only in cases of *proven* harassment or prosecutions undertaken by state officials in bad faith ... and perhaps in other extraordinary circumstances where irreparable injury *can be shown* is federal injunctive relief against pending state prosecutions appropriate." (emphasis added)).

Based on the evidence and testimony presented at the hearing, I make the following findings of fact. In March of 1993, Lavonne Burgess informed an employee of the Construction Code Authority, Gyrome Edwards, that the co-op had placed a lien on the Burgesses' home. *See generally* Mich.Comp. Laws § 570.1107(1) ("Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property shall have a construction lien upon the interest of the owner ... who contracted for the improvement ... and the interest of an owner who has required the improvement."). The Construction Code Authority is an entity hired by Attica Township, the municipality in which the home is located, to perform building inspections. Edwards then spoke with an attorney for the co-op, who advised him that the lien was filed because the Debtor had not yet paid the co-op for the materials it had supplied. Edwards wrote a letter to Scott on approximately March 25, 1993, asking that an arrest warrant be issued against the Debtor. Exhibit 1. Among the grounds which he cited for issuing a warrant was "Becoming insolvent, filing bankruptcy action, becoming subject to a receivership." *Id.*[3]

In response to this letter, a warrant was obtained and the Debtor was arrested on April 3, 1993, some 15 months after the discharge entered. At or about the time of the arrest, Edwards made a statement to the Debtor to the effect that the whole matter would be resolved if he would simply pay the debt owed to the co-op. In the course of the preliminary examination in the criminal case, Edwards testified that he had no basis for suspecting that the Debtor had committed fraud, other than the fact that the co-op had not been paid. Upon conclusion of the preliminary examination phase, the Prosecutor—who had been made aware of the bankruptcy discharge—offered misdemeanor treatment for the Debtor if the latter agreed to pay restitution. The Debtor declined this offer.

To date, the Debtor has been tried twice. In both trials, he was charged with violation of Mich.Comp.Laws § 570.152. He was also charged with larceny by conversion in the first trial. During the first trial, Edwards testified that his only concern was that the Debtor pay the co-op debt. That trial resulted in an acquittal on the larceny charge. In both trials, the jury was hung on the charge of violating the Building Contract Fund stat-

---

**3.** According to the Prosecutor's testimony, Edwards was relying on Mich.Comp.Laws § 339.2411(2)(1), which provides for certain sanctions in the event a residential builder "[b]e-com[es] insolvent, fil[es] a bankruptcy action, [or] becom[es] subject to a receivership." However, the Prosecutor elected to bring charges under a different act entirely, and one in which the solvency, etc. of the defendant is not a relevant concern.

ute. In between trials, the Prosecutor again offered a plea bargain based on restitution, which the Debtor again declined. (The Debtor is seeking relief from this Court because the Prosecutor has indicated that he may be tried a third time.)

I conclude from these facts that Edwards' sole objective in complaining to the Prosecutor was to force the Debtor to repay the co-op obligation. And it could be argued that, if Edwards violated § 524(a) in making this complaint, then enjoining the Prosecutor is justified as a means of damage control. As one court reasoned under analogous circumstances:

> Neither the investigation leading up to the prosecution, nor the prosecution itself would have been commenced but for the action taken by Mr. Zuk, attorney for Fra-Mar, in his efforts to collect the debt due Fra-Mar from debtor. Mr. Zuk's action of writing the letter to the prosecutor was in direct violation of 11 U.S.C. § 362(a)(1). While there is no way to recall that action, to vindicate the statute it is necessary to prevent so far as possible any consequences from accruing as a result of that action.... The relief sought by the [debtor seeking to enjoin prosecution] will [therefore] be granted.

*In re Ohio Waste Servs.*, 23 B.R. 59, 60–61, 9 B.C.D. 852, 7 C.B.C.2d 401 (Bankr.S.D.Ohio 1982).

Edwards was among the parties named by the Debtor in his motion requesting a show-cause hearing. But at the first hearing on this motion, I determined—and the Debtor tacitly conceded—that he was not asking for a ruling that Edwards had violated the discharge injunction. Rather, the Debtor's theory was that *the Prosecutor* would violate the injunction were he to continue criminal proceedings against him. Because Edwards had no interest at stake with respect to the

soundness of that theory, I denied the motion insofar as it related to him. Thus Edwards' testimony at the trial was solely for the purpose of elucidating the Prosecutor's motives. Because Edwards is no longer a party, the kind of "statute-vindication" reasoning articulated in *Ohio Waste* is inapplicable.

Turning to the question of the Prosecutor's alleged bad faith, the Debtor relied principally on the uncontested fact that the Prosecutor offered reduced charges if the Debtor agreed to pay restitution to the co-op. And there are cases which lend support for the proposition that prosecutorial efforts to obtain a restitution order can properly be considered a telltale sign of bad faith. *See, e.g., In re Daulton*, 966 F.2d 1025, 1027–28 (6th Cir.1992) (per curiam); *Howard*, 122 B.R. at 699–700; *Salecki*, 51 B.R. at 366–68; *Brown*, 39 B.R. at 823–24; *Kaping*, 13 B.R. at 623. In light of *Kelly*, however, I believe the proposition must be rejected.

The Court held in *Kelly* that criminal restitution obligations are nondischargeable under § 523(a)(7). *See supra* p. 406. This ruling requires acceptance of the principle that, for purposes of making dischargeability determinations, the Debtor's allegedly fraudulent conduct gave rise to two debts. One, purely civil, is owed to the co-op. The other debt—for restitution—is owed to the state and, although quasi-civil, is distinguishable from the co-op debt because it serves the state's interest in deterring crime and in punishing and rehabilitating criminals. *See Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 564, 110 S.Ct. 2126, 2134, 109 L.Ed.2d 588 (1990) ("Restitution obligations constitute debts within the meaning of § 101[ (12) ]...."). And since under *Kelly* the latter debt is within the scope of § 523(a)(7), it is only logical to conclude that the Prosecutor is free to seek restitution notwithstanding the discharge injunction.[4]

---

**4.** At least one case suggested that restitution which is ordered post-petition is a post-petition debt, even though based on pre-petition activity. *See In re Moesel*, 89 B.R. 895, 896 (Bankr. W.D.Okla.1988). If that is so, then the Prosecutor's restitution efforts are unobjectionable for the more fundamental reason that the Debtor's discharge does not encompass the restitution debt. *See* 11 U.S.C. §§ 727(b) and 301. *Moesel*

notwithstanding, however, I believe it is the timing of the debtor's alleged criminal offense which dictates whether the corresponding restitution obligation is a pre- or post-petition debt. *See* 11 U.S.C. §§ 101(5)(A) and 101(12); *In re Wright*, 87 B.R. 1011, 1013–14 (Bankr.S.D.1988); *cf. In re Poule*, 91 B.R. 83, 87, 18 B.C.D. 425, 19 C.B.C.2d 1059 (9th Cir. BAP 1988) ("[B]ecause the penalties [imposed post-petition] are based

One could argue in response to this reasoning that § 523(a)(7) is not applicable in voluntary chapter 7 cases such as this unless the restitution is imposed pre-petition. *See In re Hudson*, 73 B.R. 649, 653, 15 B.C.D. 1308, 16 C.B.C.2d 1414 (9th Cir. BAP 1987) ("Section 727(b) specifies that the debtor may be discharged 'from all debts that arose before the date of the order for relief.' Section 301 specifies that '[t]he commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.' Therefore, the status of the claim at the date of the order for relief determines whether the claim is or is not dischargeable under any subsection of § 523(a)."). As will be explained, however, I do not believe that this argument withstands scrutiny.

In *In re Rose*, 86 B.R. 86 (Bankr. E.D.Mich.1988), the statute under consideration was § 523(a)(9), which at the time excluded from discharge "any debt—(9) to any entity to the extent that such debt arises from a judgment or consent decree entered in a court of record against a debtor wherein liability was incurred ... as a result of the debtor's operation of a motor vehicle while illegally intoxicated." *See Rose*, 86 B.R. at 88. If one accepts *Hudson*'s hypothesis that claim status as of the order for relief is controlling for dischargeability purposes, then in the context of a voluntary chapter 7 proceeding a literal interpretation of this statute would have meant that victims of drunk drivers could obtain a favorable determination thereunder only if they were able to obtain a judgment or consent decree before the offender filed his or her bankruptcy petition. Reasoning that this result was both "futile" and "absurd," *id.* at 90, I examined the statute's legislative history and concluded that § 523(a)(9) renders nondischargeable "the *debts of,* and not merely the *judgments against,* drunk drivers." *Id.* at 91.

Just as a narrow interpretation of § 523(a)(9) would "result[ ] in an unseemly race to the court between injured plaintiffs and drunk-driving defendants," *id.* at 89, a similar reading of § 523(a)(7) would mean

that a governmental unit's rights can survive a voluntary chapter 7 only to the extent that it can secure an order imposing restitution before the bankruptcy case is commenced. Because the threshold issue in any § 523(a)(7) dischargeability proceeding would be whether the debtor beat the government in a race to court, such an interpretation would also produce absurd distinctions: some debtors would be punished (i.e., their restitution obligations would be rendered nondischargeable), but only those who lacked the foresight or savvy to file a bankruptcy petition before the restitution sentence is imposed.

■ Section 523(a)(7) does not explicitly require that the restitution sentence giving rise to the debt be imposed prior to the commencement of the bankruptcy case. Given the problems which would result from inferring such a requirement, the better view—which I adopt—is that the timing of the order imposing restitution is irrelevant for purposes of that statute. *See United States v. Vetter*, 895 F.2d 456, 459 (8th Cir. 1990) ("[R]estitution orders entered as part of a criminal sentence ... are excepted by section 523(a)(7) from discharge ..., [and] whether the restitution was ordered before or after the bankruptcy proceeding commenced is irrelevant."); *In re O'Malley*, 90 B.R. 417, 421 (Bankr.D.Minn.1988) (Pursuant to § 523(a)(7), "Plaintiff's liability under any restitution order which has been or may be entered in any criminal proceeding based upon pre-petition events was excepted from discharge.").

■ Thus an order of restitution is nondischargeable pursuant to § 523(a)(7) even if the order is entered post-petition. That being the case, it necessarily follows that the government is not barred by the discharge injunction pertaining to the civil debt arising from the same nucleus of facts. If the law were otherwise, then for all intents and purposes § 523(a)(7) would pertain only to fines

upon prepetition conduct, they are treated as 'arising' prepetition."); *In re Wisconsin Barge Lines*, 91 B.R. 65, 68, 20 C.B.C.2d 381 (Bankr. E.D.Mo.1988) ("[T]he [post-petition] fines imposed upon the Debtors are pre-petition claims because the conduct giving rise to these claims occurred before the filing of the bankruptcy petition.").

imposed pre-petition, in contravention of the statute as I believe it must be interpreted.

At least three circuits—the 5th, 7th and 11th—have concluded that discharge injunctions do not bar entry of a criminal restitution order. *See United States v. Pepper,* 51 F.3d 469, 473–74 (5th Cir.1995); *United States v. Alexander,* 743 F.2d 472, 480 (7th Cir.1984); *Barnette,* 673 F.2d at 1251. The Sixth Circuit, however, issued an opinion which appears to be inconsistent with this view.

In *Daulton, supra* p. 408, the debtor/plaintiff appealed the district court's affirmance of a bankruptcy court order which allowed state criminal prosecution of the debtor to continue, while "prohibiting defendants or anyone acting in concert with them from seeking restitution" relating to obligations that had been discharged. *Daulton,* 966 F.2d at 1027. In affirming the district court, the court implied that states must seek methods other than restitution in an effort to punish defendants whose criminal conduct gave rise to a dischargeable debt. *See id.* at 1027–28.

It must be stressed that the defendants in *Daulton*—who were the discharged-claim holders and "persons affiliated with ... the Brown County [Ohio] Prosecutor's Office," *id.* at 1027—did not appeal the District Court's decision. Thus comments made by the Sixth Circuit regarding the propriety of the "no-restitution" element of the bankruptcy court's order were *dicta.* The comments are also unpersuasive, as there is no discussion in *Daulton* of § 523(a)(7) or the Supreme Court's *Kelly* decision.

Support for the inference that *Daulton* is in this respect something of an aberration is provided by another decision of the Sixth Circuit. The issue in *In re Hollis,* 810 F.2d 106 (6th Cir.1987) (per curiam), was whether a court-imposed assessment of costs against a criminal defendant was "a nondischargeable debt pursuant to section 523(a)(7)." *Id.* at 107. The court noted that "[t]he assessment ... clearly was intended, at least in part, to compensate the State for the expense it had incurred in prosecuting [the debtor] in state criminal court," and hence would appear to be a compensatory debt outside the

scope of § 523(a)(7). *Id.* at 108. But "[i]n light of ... *Kelly,*" the court held that the debt was nondischargeable because it was "part of [the debtor's] criminal sentence." *Id.*

Thus in *Hollis,* the Sixth Circuit extended *Kelly*'s holding to a fine which was not designed to "make whole" a specific victim of the debtor's crime. Indeed, the court went so far as to suggest that, with respect to criminal proceedings, *Kelly* effectively deleted from § 523(a)(7) the language excepting fines which are "compensation for actual pecuniary loss." *See id.* (" '[Section] 523(a)(7) preserves from discharge *any* condition a state criminal court imposes as part of a criminal sentence.' " (quoting *Kelly,* 479 U.S. at 50, 107 S.Ct. at 361; emphasis added by *Hollis* )). Given *Hollis'* strict fidelity to the teachings of *Kelly,* it seems likely that the judicial panel which decided *Daulton* was simply unaware of *Kelly* or its implications vis-a-vis § 524(a).

In short, *Kelly* mandates the conclusion that the Debtor's discharge, although barring enforcement of the co-op debt as a civil obligation, does not prevent the Prosecutor from initiating or continuing proceedings against the Debtor with the objective of obtaining entry of an order requiring the Debtor to pay restitution. *See In re Fussell,* 928 F.2d 712, 716 (5th Cir.1991), *cert. denied,* 502 U.S. 1107, 112 S.Ct. 1203, 117 L.Ed.2d 443 (1992) (questioning whether "the prosecutor's collateral desire to secure restitution ... can properly be characterized as 'bad faith[,]' " and suggesting that *Kelly* calls for a negative response); *id.* at 717 ("[I]f we accept the validity of [the] criminal statute at issue here [which "punish[es] one who intentionally 'hinder[s] enforcement of [a] security interest or lien[,]' " *id.* at 714], we are bound to accept a degree of coercion [to pay the debt]."); *Wilson,* 30 B.R. at 97 ("Restitution to an aggrieved party is manifestly a legitimate consideration in the prosecutor's evaluation of a defendant's eligibility for pre-trial diversion."). And since that is true, it follows as a matter of logic that I cannot appropriately make a finding of prosecutorial misconduct based in whole or in part on "offers" of restitution.

With this important limitation in mind, the question becomes, under what circumstances might it be proper to conclude that a criminal case is being prosecuted in bad faith? A couple of scenarios seem plausible.

█ One of course assumes that the whole point of prosecuting a defendant is to obtain a conviction. If the evidence against the defendant is such that there is little likelihood of a guilty verdict being rendered, suspicions naturally arise that the prosecutor has some ulterior motive for proceeding with the case. *Cf., e.g., Cameron v. Johnson,* 390 U.S. 611, 619–20, 88 S.Ct. 1335, 1340, 20 L.Ed.2d 182 (1968) ("Appellants' case that there are 'special circumstances' establishing irreparable injury sufficient to justify federal intervention ... come[s] down to the proposition that the statute was enforced against them, not because the Mississippi officials in good faith regarded the picketing as violating the statute, but in bad faith as harassing appellants' exercise of protected expression with no intention of pressing the charges or *with no expectation of obtaining convictions, knowing that appellants' conduct did not violate the statute.*" (emphasis added)); *In re Jerzak,* 47 B.R. 771, 773 (Bankr.W.D.Wis. 1985) (Prosecution is in bad faith "when the prosecuting authority has reason to doubt the validity of the charges.").

█ Depending on the specifics, bad faith might also be inferred when there is a "cozy" relationship between the prosecutor and the creditor who could stand to financially benefit from the prosecution. For example, courts are understandably wary when the same attorney serves, or served, as both counsel for the creditor/crime victim and as prosecuting attorney. *See In re Penny,* 414 F.Supp. 1113, 1114–15 (W.D.N.C.1976); *In re Padgett,* 37 B.R. 280, 281, 283, 11 B.C.D. 739 (Bankr.W.D.Ky.1983); *Wilson,* 30 B.R. at 94–97.

But there is no basis for harboring such doubts in this case. The evidence demonstrated that the Prosecutor does not generally, and did not in this instance, initiate or continue criminal proceedings unless he believes he can prove his case against the defendant. Nor does the record indicate that Edwards, the co-op or the Burgesses received special treatment from the Prosecutor or, more specifically, that the prosecution was undertaken as a "favor" for any of them.

Scott credibly testified that if, on the morning of the first trial, he had been informed that the Debtor had paid the co-op debt, he nevertheless would have continued with the prosecution. He explained that his objective was to protect homeowners from being "ripped off by an unscrupulous contractor."[5] Based on this testimony and other evidence adduced at trial, I conclude that the Debtor failed to meet his burden of proving that the Prosecutor is guilty of bad faith in this matter.

As already indicated, however, the purpose of Edwards' complaint—to obtain payment of the co-op debt—was purely private. That is to say, Edwards was not himself interested in the principles of punishment, rehabilitation and deterrence to which *Kelly* alluded. Thus while there was no actual bad faith on the Prosecutor's part, the remaining question is whether the motive of the complaining witness, Edwards, can be imputed to the Prosecutor. Stated differently, does my conclusion with regard to Edwards' motivation warrant the conclusion that the Prosecutor is guilty of what might be called "constructive" bad faith?

The parties were invited to submit briefs on this question, and for his part the Debtor offered three cases which he claimed tend to support an affirmative answer because they focused on the motives of the unpaid creditor rather than the prosecutor. *See* Debtor's

---

**5.** The Burgesses did not pay the Debtor's obligation to the co-op, and the lien placed by the co-op on their home is apparently no longer enforceable. *See* Mich.Comp.Laws § 570.1117(1) ("Proceedings for the enforcement of a construction lien ... shall not be brought later than 1 year after the date the claim of lien was recorded."). Thus if there was fraud, it would seem that the ultimate victim of the crime was the co-

op, rather than the Burgesses. But while the Debtor may be correct in asserting that Scott was confused on this point, I reject his suggestion that this technical clarification somehow undermines Scott's credibility. Nor do I see any other reason why the homeowners' good fortune in avoiding a forced double payment should impact on the analysis in this case.

Supplemental Brief at p. 2 (citing *Howard*, *supra* p. 404; *Brown, supra* p. 406; and *In re Whitaker*, 16 B.R. 917, 5 C.B.C.2d 1566 (Bankr.M.D.Tenn.1982)). But *Whitaker* explicitly rejected the proposition that the motives of the complaining witness are controlling for purposes of determining whether a prosecution is in bad faith. *See id.* at 922 n. 6. And in the other two cases the court indicated that the prosecutors themselves were not properly motivated. *See Howard*, 122 B.R. at 701; *Brown*, 39 B.R. at 824–26.

It is true that in *Howard*, the court accurately quotes *In re Goree*, 46 B.R. 697, 699 (W.D.Ky.1984) as stating that "[a]ny bad faith on the part of the creditors may be imputed to the state officials." *Howard*, 122 B.R. at 701.[6] However, neither *Goree* nor *Howard* offered any rationale for saddling a prosecutor with the motives of the self-interested creditor. *See also In re Reid*, 9 B.R. 830, 832, 4 C.B.C.2d 196 (Bankr.M.D.Ala. 1981) (implicitly supporting the Debtor's position, but engaging in no real analysis with respect to the point under consideration).

The notion that the Prosecutor is chargeable with Edwards' "mind-set" might make sense if he served as Edwards' agent. But that is of course not the case: the Prosecutor represents the interests of the general public at large, and it would therefore be a gross distortion to suggest that he is acting as an agent for Edwards or any other given individual. *Cf. Davis*, 691 F.2d at 179 ("[The debtors] assert that it was improper for the state to act upon these [bad-check] claims because there was no state interest being protected; only the financial interest of the creditors was furthered. *The state, however, is prosecuting the criminal actions on behalf of all of the citizens of Delaware*, to protect the integrity of commercial transactions within the state." (emphasis added)); *In re Wagner*, 18 B.R. 339, 340, 8 B.C.D. 1065, 6 C.B.C.2d 317 (Bankr.W.D.Mo.1982) ("[T]he prosecutor ... protects the interests of the citizenry generally.").

An argument for motive imputation could also be made if it is shown that the prosecutor is simply doing the bidding of the complaining witness, rather than making his or her own determination that prosecution is warranted. *Cf. Jerzak*, 47 B.R. at 773 ("A criminal proceeding is not brought in good faith when ... the prosecuting authority fails to exercise independent judgment in continuing the prosecution."). But that theory is also of no avail to the Debtor.

As noted *supra* p. 411, the Prosecutor would not have prosecuted the Debtor unless he believed he could obtain a conviction. Even if a case is provable, moreover, a prosecutor is expected to exercise discretion regarding whether to prosecute based on factors which include resource availability and the perceived social impact of the alleged crime:

> The breadth of criminal legislation necessarily means that much conduct that falls within its literal terms should not always lead to criminal prosecution. It is axiomatic that all crimes cannot be prosecuted even if this were desirable. Realistically, there are not enough enforcement agencies to investigate and prosecute every criminal act that occurs. Moreover, some violations occur in circumstances in which there is no significant impact on the community or on any of its members. A prosecutor should adopt a "first things first" policy, giving greatest attention to those areas of criminal activity that pose the most serious threat to the security and order of the community.
>
> Nor is it desirable that the prosecutor prosecute all crimes at the highest degree available. Crimes are necessarily defined in broad terms that encompass situations of greatly differing gravity. Differences in the circumstances under which a crime took place, the motives behind or pressures upon the defendant, mitigating factors in the situation, the defendant's age, prior record, general background, and role in the offense, and a host of other particular factors require that the prosecutor view

---

**6.** Remarkably, *Goree* cited *Whitaker*, 16 B.R. at 922 n. 6, in support of this assertion. As already indicated in the text, *Whitaker* said exactly the opposite—that such bad faith "*cannot* be imput-ed to the district attorney's office." *Whitaker*, 16 B.R. at 922 n. 6 (emphasis added). Thus *Goree* either contains a typographical error, or the court simply misread *Whitaker*.

the whole range of possible charges as a set of tools from which to carefully select the proper instrument to bring the charges warranted by the evidence.

American Bar Association Standards for Criminal Justice Prosecution Function and Defense Function, Commentary on Standard 3–39 ("Discretion in the Charging Decision"), p. 73. And despite some surprising statements from him indicating otherwise, I am satisfied from my review of Scott's complete testimony that he adheres to this standard. Thus rather than simply carrying out Edwards' "instructions" to prosecute the Debtor, as would a mere instrumentality, the Prosecutor made an independent determination both that he had sufficient evidence to establish that the Debtor had committed a crime, and that prosecution was in other respects appropriate under the circumstances.

Finally, allowing a debtor to succeed by merely showing that a complaining witness filed charges in furtherance solely of his selfish pecuniary interests and imputing those intentions to the Prosecutor would undermine the public policy which presumes that public officials conduct themselves in good faith. *Supra* pp. 406–07.

For these reasons, I conclude that Edwards' private motive for participating in this prosecution cannot properly be ascribed to the Prosecutor. *See Davis,* 691 F.2d at 179 ("We cannot require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime before proceeding with what appears to be an otherwise valid criminal prosecution. Under these circumstances, the intentions of the complaining witnesses are not controlling in judging the good faith of a criminal prosecution."); *In re Tenpins Bowling,* 32 B.R. 474, 481, 10 B.C.D. 1245 (Bankr.M.D.Ga.1983) ("The fact that the complaining parties may have other motives does not alter the state's interest in prosecuting alleged criminal offenders."); *Wagner,* 18 B.R. at 340; *Whitaker,* 16 B.R. at 922 n. 6; *In re Convenient Food Mart,* 3 B.C.D. 389, 390 (Bankr.E.D.Ark.1977); *cf. Allee v. Medrano,* 416 U.S. 802, 837, 94 S.Ct. 2191, 2211, 40 L.Ed.2d 566 (1974) (Burger, C.J., concurring in the result and dissenting in part)

("One step removed from the decision of the prosecutor to prosecute is the decision of the policeman to arrest. The bad faith nature of a prosecution may sometimes be inferred from the common activity of the prosecutor and the police.... [But t]he conclusion that the prosecutor and police are acting as one to deprive persons of their rights should not be inferred too readily on the basis of police action alone."); *Lewis v. Kugler,* 446 F.2d 1343, 1348 (3d Cir.1971) ("The plaintiffs allege police misconduct, but an injunction against pending state criminal proceedings would operate against the prosecutorial authorities, and there is no allegation that they have either fostered or taken part in the alleged misconduct.").

Based on the foregoing, the Debtor's motion will be **DENIED**. An order declaring that the discharge injunction does not bar this prosecution will be **ENTERED**.