In re Aristidis ZERVOUDIS, and Calliopi Zervoudis, Debtors.

Aristidis Zervoudis and Calliopi Zervoudis, Plaintiffs,

v.

Massachusetts State Lottery Commission and Commonwealth of Massachusetts, Defendants.

Bankruptcy No. 91–17118–JNF.
Adversary No. 00–1102.

United States Bankruptcy Court,
E.D. Massachusetts.

March 31, 2000.

Jeffrey A. Schreiber, Schreiber & Associates, P.C., Danvers, MA, for plaintiffs.

Daniel J. Hammond, Office of Attorney General of Massachusetts, Boston, MA, for defendants.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the Application of Aristidis Zervoudis (the "Debtor") for Preliminary and Permanent Injunctive Relief. Pursuant to the Application, the Debtor seeks the relief requested in his Verified Complaint. His Verified Complaint contains two counts: Count I: Violation of 11 U.S.C. § 524(a)(2); and Count II: Abuse of Process. Pursuant to Count I, the Debtor seeks "preliminary and permanent injunctions enjoining the Commission from continuing to prosecute the criminal charge of larceny against the Debtor, to issue sanctions and costs against the Commission and the Commonwealth, [and] enter judgment enjoining the Defendants in the amount to be determined by the Court...." The Debtor agreed to dismiss Count II as the relief requested is barred by the doctrine of sovereign immunity.

The Court conducted an evidentiary hearing on March 2, 2000. Three witnesses testified and four exhibits were accepted into evidence. The issue presented is whether the Court should enjoin the Massachusetts Lottery Commission from continuing its involvement in the Essex County District Attorney's prosecution of the Debtor for the offense of larceny. *See* Mass. Gen. Laws Ann. Ch. 266, § 30 (West 1990).[1] The Court now makes its findings of fact and rulings of law.

---

1. Section 30 provides in relevant part the following:

(1) Whoever steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another as defined in this section, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny, and shall, if the property stolen is a firearm, as defined in section one hundred and twenty-one of chapter one hundred and forty, or, if the value of the property stolen exceeds two hundred and fifty dollars, be punished by imprisonment in the state prison for not more than five years, or by a fine of not more than twenty-five thousand dollars and imprisonment in jail for not more than two years; or, if the value of the property stolen, other than a firearm as so defined, does not exceed two hundred and fifty dollars, shall be punished by imprisonment in jail for not more than

## II. FACTS

The Debtor and his spouse filed a voluntary Chapter 13 petition on August 20, 1991. On Schedule I, the Debtors disclosed that the Debtor operated Chios. Market, located at 337 Boston Street, Lynn, Massachusetts. They further indicated that the Debtor's monthly income from Chios Market was $15,000.00 and that his income from the "Lottery" was $1,800.00.[2] The Debtors did not list the Massachusetts Lottery Commission as a creditor on Schedules D, E, or F or on the master mailing matrix.

The Debtors filed a Notice of Conversion of Case to a Case under Chapter 7 on August 24, 1992. On November 16, 1992, they filed amended Schedules and an Amended Statement of Financial Affairs. They did not list the Massachusetts Lottery Commission on their amended Schedules, and they did not amend the matrix to list the Lottery Commission. The Debtor has stated in his recent pleadings that, at the time the Chapter 13 case was converted to a case under Chapter 7, the Debtors closed the Chios Market and moved their personal residence.

Following the conversion to Chapter 7, the Debtors, on February 23, 1993, received a discharge and, following the filing of a Report of No Distribution by the Chapter 7 Trustee, the case was closed.

In April of 1992, prior to the entry of the order discharging the Debtors, Thomas J. Gill ("Gill"), on behalf of the Massachusetts Lottery Commission, filed an application for the issuance of a criminal complaint against the Debtor in the Lynn District Court pursuant to M.G.L. c. 266, § 30. Gill alleged that the Debtor, between July, 1991 and November 15, 1991, appropriated for his own use sale proceeds from the sale of lottery tickets in the sum of $35,878.94.[3] A complaint and summons were issued. Thereafter, a warrant issued for the Debtor's arrest, but he was not properly served. In 1999, the Debtor was arrested on the outstanding warrant when the driver of a car in which he was a passenger was stopped for a motor vehicle violation. The Debtor was arraigned and released on his own recognizance. The Essex County District Attorney is prosecuting the criminal case. According to the Debtor, a hearing is scheduled for May 2, 2000 in the Lynn District Court.

The Debtor moved to reopen his Chapter 7 case on September 13, 1999, following his arrest on the outstanding warrant.

one year or by a fine of not more than three hundred dollars; or, if the property was stolen from the conveyance of a common carrier or of a person carrying on an express business, shall be punished for the first offence by imprisonment for not less than six months nor more than two and one half years, or by a fine of not less than fifty nor more than six hundred dollars, or both, and for a subsequent offence, by imprisonment for not less than eighteen months nor more than two and one half years, or by a fine of not less than one hundred and fifty nor more than six hundred dollars, or both. (2) The term "property", as used in the section, shall include money, personal chattels, a bank note, bond, promissory note, bill of exchange or other bill, order or certificate, a book of accounts for or concerning money or goods due or to become due or to be delivered, a deed or writing containing a conveyance of land, any valuable contract in force, a receipt, release or defeasance, a writ, process, certificate of title or duplicate certificate issued under chapter one hundred and eighty-five, a public record, anything which is of the realty or is annexed thereto, a security deposit received pursuant to section fifteen B of chapter one hundred and eighty-six, electronically processed or stored data, either tangible or intangible, data while in transit, telecommunications services, and any domesticated animal, including dogs, or a beast or bird which is ordinarily kept in confinement. . . .
Mass. Gen. Laws Ann. Ch. 266, § 30 (West 1990).

2. On their Statement of Financial Affairs, the Debtors disclosed that their income in 1991 was $120,000 "not including lottery sales through August 20, 1991."

3. The time in which the Debtor allegedly committed larceny spanned a period of approximately two month prior to the filing of his Chapter 13 petition and two months after the filing of his petition.

The Court granted the Motion to Reopen, and the case was reopened on September 27, 1999. The Debtors filed a Motion for Approval of Debtors' Notice of Amendment to Schedule F, along with a Notice of Amendment, on October 14, 1999 for the purpose of adding three creditors, including the Massachusetts Lottery Commission with a claim in the sum of $35,878.94. Counsel to the Debtor served a "Notice to Added Creditors" on Gill at the Massachusetts Lottery Commission headquarters informing the Lottery Commission that the deadline for filing complaints under 11 U.S.C. §§ 523, 727 was December 20, 1999. The Massachusetts Lottery Commission did not file a complaint on or before the December 20, 1999 deadline.

At the trial, Gill, a Senior Field Investigator with 28 years experience with the Lottery Commission, Eugene J. Ferris, Jr. ("Ferris"), his supervisor at the Lottery Commission, and Attorney Deborah A. Tempesta, an associate at the firm representing the Debtor, testified. Both Gill and Ferris testified that the Massachusetts Lottery Commission was desirous of being repaid by the Debtor. They also testified that repayment was not the sole motivation for the criminal complaint, as criminal charges serve as a deterrent to others from misappropriating Lottery Commission monies, as well as punishment for such conduct.

Gill testified that he attempted to set up a payment plan with the Debtor but that the Debtor informed him that he lacked funds necessary to enter into such an arrangement. Gill stated that the Debtor told him that he had used monies that he owed to the Lottery Commission, either from tickets delivered to him on consignment or from monies earmarked for a special lottery account, to travel to Greece and to pay for his daughter's wedding.

Gill also stated that he terminated the Debtor as an agent of the Lottery Commission and recommended that criminal charges be brought against the Debtor. Ferris testified that the Debtor had been on probation prior to his termination for accounting irregularities with respect to monies that the Debtor owed to the Lottery Commission.

· Ms. Tempesta testified about conversations she had with two assistant district attorneys. One prosecutor indicated that he was willing to continue the Debtor's criminal case generally if the Debtor were to agree to a plan to repay the Lottery Commission in full. The other indicated that he "would be happy to dismiss the case as long as he had the permission of the Lottery Commission because the debt was fairly large."

## III. DISCUSSION

Section 524(a)(1) of the Bankruptcy Code provides the following:

(a) A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived...

11 U.S.C. § 524(a)(2).[4] The Debtor argues that the claim of the Massachusetts Lottery Commission was discharged and that the continuation of the criminal case against him is a subterfuge for the sole purpose of collecting a discharged debt. He maintains that he has satisfied all the elements for the issuance of an injunction: a substantial likelihood of success on the merits; a significant risk of irreparable harm if the injunction is not granted; a favorable balance of hardships; and com-

---

4. *See also* 11 U.S.C. § 348(d), which provides the following:

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is convert-

ed under section ... 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

patibility between the issuance of the injunction and public policy. Because he maintains that the Lottery Commission filed the Application for a criminal complaint in bad faith,[5] he argues that the decision in *Younger v. Harris*, 401 U.S. 37, 53, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), empowers this Court to enjoin the state court proceeding. The Court disagrees.

The United States Supreme Court in *Younger v. Harris*, set forth "the long-standing public policy against federal court interference with state court proceedings"[6] and stated the following: "courts of equity should not act, and particularly should not act to restrain a criminal prosecution when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. at 43–44, 91 S.Ct. 746. In restricting federal courts from enjoining state court prosecutions, it highlighted notions of comity and the concept of federalism. The Court stressed that "in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate,'" adding that "the cost, anxiety, and inconvenience of having to defend against a single

criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term." *Id.* at 46 (citing *Fenner v. Boykin*, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926)). The Court concluded that a litigant must show "bad faith, harassment, or any other unusual circumstance that would call for equitable relief," such as the inability of the litigant to protect his or her constitutional rights in the criminal proceeding. *Id.* at 54, 91 S.Ct. 746.

 While the Debtor has gone to considerable length to convince this Court that the Lottery Commission is acting in bad faith and that this bad faith warrants the issuance of an injunction, the Court finds that the Debtor has failed to sustain his burden of proof. The Debtor failed to call as a witness any representative of the office of the Essex County District Attorney—the arm of the Commonwealth charged with prosecuting larceny. While Mr. Gill and the Lottery Commission may have sworn out the criminal complaint, and while Gill and Ferris expressed confidence that they influence the decision making of the district attorney, their testimony is simply not dispositive. As the Court rec-

---

**5.** The Debtor repeats this argument several times in his brief. In view of the fact that the Debtor did not list the Lottery Commission as a creditor and the Lottery Commission, thus, had no knowledge of the Debtors' pending bankruptcy case at the time it filed its application for a criminal complaint, the Court cannot fathom how the Debtor can make this argument. It is one thing to argue that the continuation of the criminal proceeding is indicative of bad faith, another to argue that it was commenced in bad faith. In view of the Debtor's problems with the Lottery Commission prior to his termination as an agent, the Court suspects that any bad faith present might be on the part of the Debtor in failing to list the Lottery Commission as a creditor at the time his Chapter 13 petition was filed or at the time it was converted to a case under Chapter 7.

**6.** The Court observed the following:

Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts. In 1793 an Act unconditionally provided: '(N)or shall a writ of injunction be granted to stay proceedings in any court of a state * * *.' 1 Stat. 335, c. 22, § 5. A comparison of the 1793 Act with 28 U.S.C. § 2283, its present-day successor, graphically illustrates how few and minor have been the exceptions granted from the flat, prohibitory language of the old Act. During all this lapse of years from 1793 to 1970 the statutory exceptions to the 1793 congressional enactment have been only three; (1) 'except as expressly authorized by Act of Congress'; (2) 'where necessary in aid of its jurisdiction'; and (3) 'to protect or effectuate its judgments.' In addition, a judicial exception to the longstanding policy evidenced by the statute has been made where a person about to be prosecuted in a state court can show that he will, if the proceeding in the state court is not enjoined, suffer irreparable damages.

401 U.S. at 43, 91 S.Ct. 746.

ognized in *In re McMullen,* 189 B.R. 402 (Bankr.E.D.Mich.1995),

> The notion that the Prosecutor is chargeable with [the creditor's] "mind-set" might make sense if he served as [the creditor's] agent. But that is of course not the case: the Prosecutor represents the interest of the general public at large, and it would therefore be a gross distortion to suggest that he is acting as an agent for [the creditor] or any other given individual.
>
> \* \* \* \* \* \*
>
> An argument for motive imputation could also be made if it is shown that the prosecutor is simply doing the bidding of the complaining witness, rather than making his or her own determination that prosecution is warranted.

189 B.R. at 412. *Cf. In re Richardello,* 28 B.R. 344, 347 (Bankr.D.Mass.1983) (" 'the intentions of the complaining witnesses are not controlling in judging the good faith of a criminal prosecution' "). In the absence of testimony from the Essex County District Attorney, this Court cannot find that he is either the agent of the Lottery Commission or is simply doing the bidding of the Lottery Commission. While Ms. Tempesta testified that an attorney from the District Attorney's office indicated a willingness to dismiss the criminal case if he had the permission of the Lottery Commission, the Court finds that that testimony is insufficient to establish that the District Attorney is an agent of the Lottery Commission.

The Court recognizes that "lower federal courts ... have failed to articulate coherent standards and policy justification for enjoining state criminal proceedings involving consumer debtors." Carlos J. Cuevas, "Criminal Bad Check Prosecutions, the Younger Abstention Doctrine, Bankruptcy Policy, and Bankruptcy Code Section 105(a)," 103 Comm. L.J. 241 (1998). Having reviewed the seminal cases of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Kelly*

*v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (criminal restitution obligations are nondischargeable under 11 U.S.C. § 523(a)(7)), and the numerous decisions in which courts have struggled with the issue, the Court finds the decision in *McMullen* to be the most persuasive. In that case, the bankruptcy court afforded great weight to the Supreme Court's determination that "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief," 189 B.R. at 404 (quoting 401 U.S. at 43–44, 91 S.Ct. 746), while also observing that at least three circuits have determined that the discharge injunction does not bar entry of a criminal restitution order. 189 B.R. at 410 (citing *U.S. v. Pepper,* 51 F.3d 469, 473–74 (5th Cir.1995), *U.S. v. Alexander,* 743 F.2d 472, 480 (7th Cir.1984), and *Barnette v. Evans,* 673 F.2d 1250, 1251 (11th Cir. 1982)). Under the facts of this case, the Court finds that the Debtor has failed to establish that the Essex County District Attorney is acting in bad faith, that he will suffer irreparable injury, and that he lacks an adequate remedy at law.

## IV. CONCLUSION

In accordance with the foregoing, the Court denies the Debtor's Application for Preliminary and Permanent Injunctive Relief.