## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

No. 94-10321
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD R. PEPPER,

Defendant-Appellant.
_____

Appeal from United States District Court
for the Northern District of Texas
_____

(April 20, 1995)

Before HIGGINBOTHAM, SMITH and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Donald R. Pepper appeals both his convictions and sentence on fifteen counts of aiding and abetting in the commission of mail fraud in violation of 18 U.S.C. §§ 2, 1341, three counts of aiding and abetting in the commission of wire fraud in violation of 18 U.S.C. §§ 2, 1343, and two counts of aiding and abetting in the commission of money laundering in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(i). For the following reasons, one conviction for mail fraud is reversed, and the remaining convictions and sentence are affirmed.

## BACKGROUND

In 1989, Pepper started a scheme to defraud people of their money by holding himself out as a wealthy businessman who was

1

interested in attracting investors into a business venture to buy and sell water purifiers. Pepper flashed large amounts of cash in front of potential investors and made grandiose representations about his personal wealth and the capacity of the business venture to reward investors with equal largess.

Investors were told that they would receive a sixty percent return on their money. Commitments to Pepper by the investors were made in $5,000 units and paid to him in person, by mail, or by wiring it to him. Pepper would use the money to buy water purifiers from a company called National Safety Administration ("NSA") and then sell the water purifiers through telemarketing. According to the evidence submitted at trial, only a few water purifiers were ever bought from NSA. Pepper was not a millionaire: in fact, his personal checking account balance at a credit union for the entire year of 1990 totalled $10.17. Pepper simply kept most of the money he solicited from investors, using it to finance an extravagant lifestyle in which he rented Lear jets, bought lavish dinners, and generally maintained his profile as a wealthy businessman. As a result of his scheme, Pepper swindled investors out of approximately $171,000.

In January of 1991, Pepper filed a petition for bankruptcy. On November 6, 1991, he was granted a discharge. Among the dischargeable debts were at least thirteen of the loans that investors had made to him.

Pepper was indicted on fifteen counts of aiding and abetting mail fraud, three counts of aiding and abetting wire fraud, two

counts of aiding and abetting money laundering and one count of conspiracy to commit money laundering. The conspiracy to commit money laundering count was dropped before trial. After a jury trial, he was convicted on all of the remaining counts. On the mail fraud and wire fraud indictments, Pepper was sentenced to sixty months of imprisonment per count. On each of the money laundering counts, he was sentenced to seventy-eight months of imprisonment. All sentences were to run concurrently. He was also sentenced to three years of supervised release after he had served his jail term and ordered to pay a $50 special assessment per count. He was also ordered to pay $155,560 in restitution to the victims of his crimes. Pepper appeals his sentence and convictions.

DISCUSSION

ADMISSION OF HEARSAY

Pepper contends that the district court erred in allowing the government to ask a question that incorporated hearsay.[1] He argues that the hearsay question violated his Sixth Amendment right to confront witnesses, because the hearsay statements were made by people who never testified. The disputed testimony is as follows:

---

[1]     Under Fed. R. Evid. 801(c), hearsay is a:

[S]tatement, other that one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the matter asserted.

3

Q.    Would you be surprised if William Chenail [an NSA employee] told us the receipt that you purportedly have from him for $10,000 is phony?

MR. WHITE [Pepper's attorney]: Objection, Your Honor, if there is no independent evidence of that, then that is improper cross-examination because it is based upon hearsay.

MS. HOWARD [Government's Attorney]: Your Honor I have a good faith basis.

THE COURT: You may proceed.

A.    Madam Prosecutor, I will tell you that I wrote Bill Chenail's name on the bottom of this and gave it to my accountant, or bookkeeper, so that she would know who to credit it to, in addition, Mr. Steven Worth and Joe James [Investors in the scheme].

BY MS. HOWARD:

Q. My question is: would you be surprised if Bill Chenail told [a federal agent] that the receipt you got is phony?

A. Yes, I would be surprised.

The government argues that the prosecutor's question was not hearsay because it did not seek to assert a fact as true, only that an assertion was made.  Assuming that the government's question incorporates hearsay, its admission at trial was harmless.  In determining whether the admission of hearsay evidence was harmless, we must consider the other evidence in the case, and then decide if the inadmissible evidence actually contributed to the jury's verdict.  United States v. El-Zoubi, 993 F.2d 442, 446 (5th Cir. 1993).  We will find such testimony harmful and reverse a conviction only if it had a "substantial impact" on the jury's verdict.  Id.  The question posed by the prosecutor was addressed to whether Pepper was running a legitimate business.  With this question, the government sought to show that Pepper had lied about

4

his involvement in the scheme.  The government introduced other evidence at trial showing the falsity of Pepper's claims about the scheme.  This evidence included, but was not limited to, an NSA independent distributor application, which showed that Chenail did not become involved with NSA until long after the date of the receipt.  Other evidence included inconsistencies in a purported ledger of the investments, Pepper's inability to name any of his employees, and bankruptcy documents in which Pepper alleged that he had no business records.  Viewing the evidence as a whole, we conclude that the statement was cumulative and had little, if any, impact on the jury.  See El-Zoubi, 993 F.2d at 446.

DIRECT ARGUMENT

Pepper contends that his convictions on four counts of the mail fraud were improper because the victims testified that Pepper made no direct misrepresentations to them. We find this contention to be without merit.  In order to convict under the mail fraud statute, 18 U.S.C. § 1341, the government has to prove the existence of a scheme or artifice:

> [T]o defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do,  . . . .

There is no statutory requirement that direct misrepresentations must be made to the victims of the scheme. The defendant has cited

5

no authority to this effect and we have found none. See Kreuter v. United States, 218 F.2d 532,535 (5th Cir. 1955)(stating that it is not necessary to prove communication of the alleged false representations to the victims). This contention has no merit.

UNNAMED VICTIMS

Pepper contends that the district court allowed evidence concerning victims who were not named in the indictment. He argues that he was prejudiced because the district court submitted a jury question with respect to these investors. He states that the variance between the indictment and the jury instruction prevented him from adequately preparing for trial. Our review of the record reveals that although victims not charged in the indictment testified at trial to show the overall scheme, no instruction concerning these witnesses was submitted to the jury. Thus, Pepper's claim of prejudice caused by a jury charge is meritless.

Pepper also argues that the district court erred in ordering restitution for victims of the scheme not named in the indictment. A district court can order restitution under the Victim and Witness Protection Act, 18 U.S.C. § 3663 (VWPA). In Hughey v. United States, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the Supreme Court held that, under the VWPA, restitution for victims can only be awarded for the loss caused by the specific offense that is the basis of the offense of conviction. Id. at 413; 110 S.Ct. at 1981. To convict Pepper of mail and wire fraud, the government had to prove a scheme to defraud, rather than specific incidents of fraud limited to individual investors. See 18 U.S.C.

6

§§ 341, 343.  Because a fraudulent scheme is an element of his offenses of mail and wire fraud, actions pursuant to that scheme are conduct underlying the offense of conviction.  United States v. Stouffer, 986 F.2d 916, 928 (5th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 115, 126 L.Ed.2d 80 (1993)

In United States v. Stouffer, 986 F.2d 916 (5th Cir. 1993), two codefendants had been convicted of wire fraud and mail fraud and the court had ordered restitution of the amount allegedly lost because of the scheme.  The defendant contended that under Hughey, they could not be ordered to pay back all of the losses.  We disagreed.  We found that "because the scheme to defraud was specifically defined in the indictment--i.e., the indictment described in detail the duration of [the defendants'] scheme and the methods used" the district court's inclusion of all losses caused by the scheme to defraud satisfied Hughey's requirement that sentencing courts focus only on the specific conduct underlying the offense of conviction.  Id. at 929-30.

Similarly, in this case, the indictment also described the duration of the scheme, i.e., from February 19, 1990 until September 1990, and the methods used i.e., convincing people to invest money in a telemarketing operation and then converting the money to personal use, the indictment is also specific enough to satisfy Hughey.  Thus, the district court could order restitution to the victims not named in the indictment.

BANKRUPTCY DISCHARGE

Pepper contends that the district court could not order restitution as part of his sentence because the debts of some of the people that were to be compensated had been discharged in bankruptcy. We disagree. Generally, a bankruptcy proceeding and a criminal prosecution are fundamentally different proceedings, both in purpose and procedure, and the causes of action resolved by each are totally different. United States v. Tatum, 943 F.2d 370, 381 (4th Cir. 1991). The pursuit of one proceeding will seldom resolve the other. Id. at 381-82. As such, we do not believe that a bankruptcy discharge has any effect on the district court's power to order restitution in a criminal case. See Kelly v. Robinson, 479 U.S. 36, 50 (1986)(holding that under the established law that bankruptcy courts could not discharge criminal judgments)

In United States v. Carson, 669 F.2d 216 (5th Cir. 1982), the district court had ordered restitution as a condition of parole. The defendant had already obtained a discharge for the debt of those people who were to be compensated. The defendant argued that the discharge restricted the district court from ordering restitution. The Court rejected the arguments for two reasons. Primarily, the Court reasoned that making restitution was consistent with the spirit of probation as offering a offender the chance to rehabilitate himself. Id. at 217-18.

Secondly, the Court held that although a bankruptcy discharge extinguishes a defendant's liability, it does not extinguish the losses that the victim suffered. Id. at 217. The Court determined

8

that restitution seeks to compensate for this loss.  <u>Id.</u>  It stated that the defendant does not "offer any reason to restrict the losses for which restitution is authorized to those for which the aggrieved party retains a right of action."  <u>Id.</u>

Similarly, in this case, Pepper's bankruptcy discharge does nothing to relieve the loss suffered by the victims of his scheme. Therefore, like in <u>Carson</u>, we hold that a bankruptcy discharge does not limit a district court's power to order restitution in a criminal case.  Pepper's contention to the contrary is rejected.

<u>OBSTRUCTION OF JUSTICE</u>

Pepper contends that the district court erred in giving him a two point increase in his offense level for obstruction of justice under § 3C1.1 of the United States Sentencing Guidelines.  Under U.S.S.G § 3C1.1:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

Included in the examples of conduct to which this enhancement applies is committing perjury and producing a "false, altered, or counterfeit document" during a judicial proceeding.  U.S.S.G § 3C1.1, application notes 3(b) & (c).  The court's finding on the issue of obstruction of justice is a factual determination which may be reviewed only for clear error.  <u>United States v. Velgar-Vivero</u>, 8 F.3d 236, 242 (5th Cir. 1993).

In this case, the district court increased the offense level because it found that Pepper had created false documents in the

9

form of receipts and a ledger that were submitted at trial. At trial, the government demonstrated that the entries were made in the ledger for payments received before checks were even written. The government also introduced Pepper's bankruptcy documents in which Pepper denied the existence of any business records covering the period named in the indictment. This evidence corroborated the district court's conclusion that Pepper submitted false documents during a judicial proceeding.[2] We find this contention to be without merit.

JURISDICTION

Pepper contends that the district court had no jurisdiction because his scheme only incidently involved the mails and therefore should have been prosecuted under state laws. In order to convict a defendant for mail fraud, the government must prove, inter alia, that the mails were used in furtherance of a scheme to defraud; this element is the basis of federal jurisdiction. United States v. Vontstein, 872 F.2d 626, 628 (5th Cir. 1989). The use of the mail must be an integral part of the scheme. United States v. Kent, 608 F.2d 542, 546 (5th Cir. 1979), cert. denied, 446 U.S. 936, 100 S.Ct. 2153, 54 L.Ed.2d 788 (1980).

In Periera v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), two men convinced a woman to invest $35,000 in a

---

[2] Moreover, there is also sufficient evidence in the record to conclude that Pepper perjured himself when he testified at trial that he had not told people he was wealthy. This would also support a two level increase for obstruction of justice. See U.S.S.G. § 3C1.1, application note 3(b)(citing perjury as an example of obstruction of justice).

phony oil deal.  The victim of the scheme sent a $35,000 check through the mail to the two men.  In a prosecution for mail fraud, the Supreme Court found that the use of the mail service was an essential part of the scheme because it was the way that the men were to received the funds from the victims.  Id. at 9; 74 S.Ct. at 363.  Similarly, in this case, where Pepper was receiving the investors' money by mail, it was also an essential part of the scheme.  Thus, the district court had jurisdiction.

In a letter to this court and at oral argument, the government has conceded that there was insufficient evidence to convict Pepper of count fourteen of the indictment.  After examining the record, we agree and will reverse Pepper's conviction on this count. However, this reversal does not affect his sentence, his jail term, or the amount of restitution ordered as part of his sentence.[3]

CONCLUSION

For the foregoing reasons, Pepper's convictions and sentence, except for count fourteen of the indictment, are AFFIRMED. Pepper's conviction on count fourteen is REVERSED.  The total amount of Pepper's special assessments is reduced by $50.

---

[3]The amount of restitution was supported by a preponderance of the evidence.  See  United States v. Reese, 998 F.2d 1275, 1282 (5th Cir. 1993)(holding that the factual underpinnings of a restitution order must be proved by a preponderance of the evidence).