IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-40712
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAYMOND ALPHONSO DALEY,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas, Corpus Christi
(USDC No: C-01-CR-17-1)

April 24, 2002

Before JOLLY, JONES, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

A jury convicted Raymond Daley of possession with intent to
distribute approximately 1,365 kilograms of marijuana.  The border
patrol arrested Daley after finding two million dollars worth of
marijuana in his tractor-trailer.  The marijuana was hidden in a
couple of boxes of frozen french fries.  On appeal, Daley argues
that the district court committed reversible error by admitting
hearsay evidence concerning telephone calls Daley made and received

_____

[1]Pursuant to 5th Cir. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

in the days before his arrest.  We find no reversible error and affirm Daley's conviction and sentence.

I

On January 14, 2001, Daley drove a tractor-trailer up to the border patrol checkpoint south of Falfurrias, Texas.  When questioned, Daley lied and told the border patrol agent that he was a United States citizen.  He further indicated that he was taking a load of frozen french fries to San Antonio.  At the checkpoint, a canine alerted a DEA agent to the possibility of drugs in the trailer.  The border patrol agent then asked Daley to pull his truck into a secondary inspection area.

While in this area, the border patrol agent asked Daley for a bill of lading.  Daley produced two different bills of lading.  The first bill indicated that (1) the shipper was Georgia Freezer Services located in Cartersville, Georgia, (2) the load was sealed and contained frozen french fries, and (3) the destination was HEB Food Corporation in San Antonio, Texas.  The second bill of lading conflicted with the first bill of lading.  The second bill indicated that (1) the shipper was Georgia Freezer Services; (2) the load was sealed and contained frozen french fries; and (3) the destination was HEB Food Corporation in McAllen, Texas.  The second bill of lading bore a handwritten note, signed by S. Morgan, calling for delivery of the entire load of fries to San Antonio.[2]

_____

[2]At trial, the government introduced a third bill of lading that Daley had shown to a Louisiana Public Service Commission

2

The border patrol agent then asked Daley about his travel plans. Daley said that his job required him to deliver french fries to HEB food stores located in McAllen and San Antonio.[3] According to Daley, he first went to McAllen where S. Morgan, wearing a HEB uniform, instructed him to proceed along with the entire load to San Antonio. During this conversation, Daley told the agent that he was present -- but remained in the cab -- when the shipper loaded his trailer in Georgia. Throughout his dialogue with the border patrol agent, Daley appeared nervous.

Eventually, the DEA agent and the border patrol agent searched Daley's trailer. They found 1,365 kilograms of marijuana. A jury convicted Daley of possessing with an intent to distribute more than one thousand (1000) kilograms of marijuana. See 18 U.S.C. §§ 841(a)(1), 841(b)(1)(A). Because of previous convictions for

---

officer two days before his arrest. Daley did not show this bill to the border patrol agent. The third bill of lading indicated that (1) the shipper was Georgia Freezer; and (2) the destination was HEB Food in McAllen. The third bill contained a seal number different from the other two bills. It did not mention a delivery to San Antonio.

Daley, who testified in his own defense, blamed the multiple, inconsistent bills of lading on S. Morgan. According to Daley, when he arrived in McAllen, S. Morgan took from him the bill of lading that Daley had shown to the public service officer in Louisiana. In its place, S. Morgan provided the two bills Daley later showed to the border patrol agent at the checkpoint. Notably, S. Morgan did not testify at trial. The government contends that S. Morgan is fictitious.

[3]Daley also testified that his boss, Newton Palmer, asked him to fly down to Georgia from New York to deliver the fries to San Antonio and McAllen. Palmer did not testify at trial.

larceny, grand larceny, and an attempted cocaine delivery, the district court sentenced Daley to 240 months in prison, a ten-year term of supervised release, and a special assessment. See U.S.C. § 841(b)(1)(A). Daley appeals his conviction and sentence.

III

As we have indicated, the focus of this appeal is hearsay testimony concerning telephone calls Daley made and received before his arrest. At trial, the government introduced Daley's cellular telephone into evidence. The cell telephone's memory showed that Daley made and received calls from a telephone number in the 956 area code. At trial, a DEA agent, Mills, testified that this phone number belonged to Elizabeth Bazan. Mills further testified that Bazan's husband was under investigation for drug trafficking. Mills based this "investigation" testimony on out-of-court statements of other DEA agents. Daley timely objected to the testimony on hearsay grounds. The district court allowed the testimony in evidence.

On appeal, Daley argues that the admission of this testimony constituted reversible error. We review the district court's decision to admit evidence for abuse of discretion. See United States v. Wells, 262 F.3d 455, 459 (5th Cir. 2000) (citation omitted).

The government concedes that Mills's testimony constituted hearsay not within any exception. See FED. R. EVID. 801, 802, 803,

4

804, 807 (defining hearsay and its exceptions). Clearly, the government introduced Mills's testimony -- i.e., that Bazan's husband was under investigation for drug trafficking -- for the truth of the matter asserted -- i.e., that Bazan was, in fact, under investigation for drug trafficking. See FED. R. EVID. 801 (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted"). Accordingly, the district court abused its discretion in admitting Mills's testimony concerning the drug trafficking investigation of Bazan.

This conclusion does not end our inquiry, however. For the introduction of hearsay evidence to warrant reversal, the admission of the evidence must not be harmless. See FED. R. EVID. 103(a). "In determining whether the admission of hearsay evidence was harmless, we must consider the other evidence in the case, and then decide if the inadmissible evidence actually contributed to the jury's verdict." United States v. El-Zoubi, 993 F.2d 442, 446 (5th Cir. 1993) (citation omitted). "We will find such testimony harmful and reverse a conviction only if it had a 'substantial impact' on the jury's verdict." Id. (citation omitted); see also Wells, 262 F.3d at 463 (applying the "substantial impact" standard to the admission of out-of-court statements contained in drug ledgers).[4]

---

[4]Notably, Daley does not challenge the introduction of Mills's testimony under the Confrontation Clause. U.S. CONST. amend. VI. Although he mentions the right to confront witnesses in passing, nowhere in his brief does Daley make an argument under the Sixth

5

In deciding whether the hearsay evidence had a "substantial impact" on the jury's verdict, we must consider the evidence in relation to the entire trial. See Wells, 262 F.3d at 463 (citing United States v. Gadison, 8 F.3d 186, 192 (5th Cir. 1993)). Here, the government argues that because the other evidence against Daley was overwhelming, Mills's testimony about Daley's contact with a suspected drug trafficker did not have a substantial impact on the verdict. The evidence against Daley included: (1) Daley's nervous demeanor when questioned by the border patrol agent; (2) the fact that Daley was carrying multiple, inconsistent bills of lading; (3) the fact that Daley first went from Georgia to McAllen (a town on the Mexican border) before proceeding to San Antonio; (4) Daley's previous conviction for an attempted cocaine sale from which the jury could infer intent to distribute the marijuana; and (5) the large quantity -- and consequently street value -- of the marijuana in the tractor-trailer.

On the other hand, Daley argues that the admission of the hearsay evidence did have a substantial impact on the verdict because (1) the government made Daley's telephone calls the

---

Amendment or reference any cases evaluating the admission of hearsay evidence under the Confrontation Clause. See, e.g., United States v. Ismolia, 100 F.3d 380, 391 (5th Cir. 1997). As a consequence, Daley has waived any potentially cognizable Confrontation Clause claims. See United States v. Thames, 214 F.3d 608, 611 n.3 (5th Cir. 2000); see also FED. R. APP. P. 28(a)(9)(A) (Appellant's brief must contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies. . . .").

centerpiece of its closing argument and (2) the large weight that the jury was apt to give to the fact that Daley was in close contact with a suspected drug trafficker.

Before proceeding with our analysis, we should again note that Daley took the stand in this case and testified in his defense (to be sure, a rarity in criminal cases such as this one). In doing so, he attempted to explain his side of the story. In closing argument, the government debunked Daley's testimony by stating that the "one bit" of evidence Daley couldn't explain away was his phone calls to Bazan. In fact, this line of argument formed a significant part of the government's closing argument. The government now concedes that this "debunking" evidence constituted inadmissible hearsay.

We find troubling the government's argument on appeal. If, in fact, the government did not expect the hearsay evidence to have a substantial impact on the verdict, we do not understand why the government spent one third of its closing argument explaining and repeating this evidence to the jury. Clearly, the government thought that this evidence was important for the jury to consider closely; otherwise, it would have stressed the other evidence against Daley at closing argument.

Nonetheless, we must consider the hearsay evidence in the light of all the evidence at trial, not just the evidence emphasized by the government during closing argument. See United

7

States v. Pepper, 51 F.3d 469, 472 (5th Cir. 1995) (citing El-Zoubi, 993 F.2d at 446). As a consequence, because of the magnitude of the other evidence against Daley, we think it is clear that the jury would have quickly convicted Daley without this hearsay evidence. He was, after all, a defendant with a previous criminal record for an attempted cocaine sale, who lied about his citizenship, who produced phoney bills of lading, who had been entrusted with a valuable cargo of contraband, and whose story had not been corroborated by testimony of any other witnesses (either his boss or S. Morgan). Given this background, the hearsay evidence that he had had a conversation with one whose husband was under investigation for drug trafficking would not have much impact to further demonstrate Daley's guilt. Therefore, we hold that Mills's testimony did not have a substantial impact on the jury's verdict.

## IV

For the foregoing reasons, we affirm Daley's conviction and his sentence.

AFFIRMED.