**In re Paul Chayne WILLIAMS, Debtor.**

**Paul Chayne Williams, Plaintiff–Appellant,**

v.

**Donald H. Meyer, Suzanne S. Meyer, J. Patrick Kelly, Judge, El Paso County District Court, and District Court, Fourth Judicial District, El Paso County Colorado, Defendants–Appellees.**

**BAP No. CO–10–020.**
**Bankruptcy No. 97–12852.**
**Adversary No. 09–01553.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Nov. 9, 2010.

Submitted on the briefs: *

Paul Chayne Williams, pro se.

Before THURMAN, RASURE, and SOMERS, Bankruptcy Judges.

RASURE, Bankruptcy Judge.

Appellant Paul Chayne Williams ("Williams") appeals the order of the bankruptcy court for the District of Colorado dismissing his complaint against Donald H. and Suzanne S. Meyer (collectively the "Meyers") for failing to state a claim for which relief may be granted.

For the reasons stated herein, we AF-FIRM.

## I. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit unless one of the parties elects to have the district court hear the appeal.[1] None of the parties elected to have this appeal heard by the United States District Court for the District of Colorado, and therefore appellate review by this Court is by consent.

█ A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but

---

* None of the Appellees entered an appearance herein or participated in the appeal. Appellant did not request oral argument, and after examining the Appellant's brief and the appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal.

*See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–1 (2002).

execute the judgment.' " [2] Here, the bankruptcy court's order concluded the adversary proceeding, and thus the order is final for purposes of review.

## II. STANDARD OF REVIEW

 Dismissal of a complaint under Rule 12(b)(6) [3] for failure to state a claim for which relief may be granted is reviewed *de novo*. [4] Under the recently established *Twombly/Iqbal* [5] standard for determining whether a claim has been stated, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " [6] "A claim has facial plausibility when the plaintiff pleads factual content [as opposed to legal conclusions] that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [7] Because Williams is *pro se*, his complaint is construed somewhat more liberally to determine whether he has alleged facts sufficient to state a claim. [8]

## III. FACTUAL BACKGROUND

Williams received a Chapter 7 discharge in 1997. On August 31, 2009, Williams filed a complaint seeking enforcement of the discharge injunction against the Meyers (the "Complaint"). [9] He alleged that the Meyers sought to collect a discharged debt by causing him to be criminally prosecuted for securities fraud and that they continue to collect the debt through a restitution order that was entered after he was convicted of securities fraud. The essential facts stated in the Complaint (which we must deem to be true), and facts derived from the exhibits attached thereto, are summarized as follows:

In January 1997, Williams borrowed $6,000 from Donald Meyer ("Mr. Meyer"). [10] Mr. Meyer paid $5,000 directly to Williams and at Williams direction, paid

---

2. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

3. *See* Fed.R.Civ.P. 12(b)(6).

4. *See Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir.2007).

5. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

6. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

7. *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

8. *Bemis*, 500 F.3d at 1218.

9. In his Complaint, Williams also named the judge of the El Paso County District Court and the district court itself as defendants, but apparently they were never served. The bankruptcy court dismissed all claims against the judge and the district court *sua sponte* on the ground that "federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Order Granting Motion to Dismiss*, Appendix Exhibit ("App. Ex.") A, at 4.

 In his brief, Williams argues only that the bankruptcy court erred in dismissing his claims against the Meyers, and therefore we do not review the dismissal of claims against the judge and the district court.

10. *Complaint*, App. Ex. B, at 3, ¶¶ 1–3. Normally, we would cite to the appendix by page number of the appendix rather than the exhibit designation of a particular document contained in the appendix. However, Williams's appendix was not consecutively paginated, as required by our local rules. Rather, he compiled four documents from the record and labeled them Exhibits A through D. Williams was advised of this deficiency and others, and was advised that failure to cure could result in dismissal of his appeal. Although Williams did not cure the deficiencies, we nevertheless have considered his appendix in determining this appeal.

$1,000 to Williams's attorney, James Reed.[11] In exchange, Williams executed a promissory note to Mr. Meyer in the amount of $9,000, payable in six months (the "Promissory Note").[12]

On March 6, 1997, Williams filed his petition for relief under Chapter 7 of the Bankruptcy Code.[13] Mr. Meyer did not file an action seeking to except the Promissory Note from discharge or to object to Williams's discharge generally.[14] Williams received his Chapter 7 discharge on July 22, 1997.[15] For reasons not stated in the Complaint, the discharge was limited to debts incurred after March 21, 1995.[16] The discharge included the debt represented by the Promissory Note, and Williams alleged that Mr. Meyer had actual notice of the discharge through notice to entities owned by Mr. Meyer.[17]

On May 13, 1998, the Meyers contacted their county district attorney and jointly filed a criminal complaint against Williams, alleging that Williams committed fraud in the offer and sale of investments to them from 1990 through 1993 and in obtaining the $6,000 loan in January 1997.[18]

On May 20, 1998, the Meyers, the criminal investigator and the district attorney "entered into an agreement" that the district attorney would prosecute Williams for "non-payment of the $9,000 Promissory Note ... knowing that his debt had been lawfully discharged" and that they would obtain "an order of restitution" requiring Williams "to pay the discharged debt of $9,000 to Donald H. Meyer, plus interest at 12% per annum, from Jan. 1997."[19] In addition, they agreed to prosecute Williams for "all the investments of Meyers, ... for Fraud and Other Prohibited conduct in the offer and sale of a security to Meyers, beginning Aug. 17, 1990 through Feb. 11, 1993."[20]

On February 9, 2000, the district attorney, on behalf of the State of Colorado, filed a criminal information against Williams charging him with fraud in the offer and sale of securities and felony theft.[21] Approximately one year later, the district attorney amended the information to charge Williams with fraud in the offer and sale of securities from August 1990 to January 1997 (which encompassed the

---

**11.** *Checks*, attached to *Complaint*, App. Ex. B, as Exhibits 1 and 2.

**12.** *Promissory Note dated January 10, 1997*, attached to *Complaint*, App. Ex. B, as Exhibit 3. Williams does not explain why he promised to pay $3,000 more than he borrowed.

**13.** *Complaint*, App. Ex. B, at 3, ¶ 4.

**14.** *Id.*

**15.** *Discharge of Debtor*, attached to *Complaint* as Exhibit 6.

**16.** *Id.*

**17.** *Complaint*, App. Ex. B, at 3, ¶ 8; *Certificate of Service of Discharge of Debtor*, attached to *Complaint* as Exhibit 6. Mr. Meyer himself is not listed on the certificate of service of the discharge order, although the two entities

named by Williams do appear. It is also unclear whether Mr. Meyer personally had notice of the filing of the bankruptcy so that he had the opportunity to seek an exception to discharge of the debt represented by the Promissory Note, but for the purposes of reviewing the Complaint in the light most favorable to Williams, we assume that Mr. Meyer did have notice of the bankruptcy and chose not to file an action under 11 U.S.C. § 523(a)(2), (4), or (6).

**18.** *Complaint*, App. Ex. B, at 4, ¶¶ 12–15; *List of Investments*, attached to *Complaint* as Exhibit 8.

**19.** *Complaint*, App. Ex. B, at 4, ¶ 18.

**20.** *Id.* at 4, ¶ 19.

**21.** *Complaint*, App. Ex. B, at 5, ¶ 20.

Promissory Note in the fraud charge) and dismissed the felony theft charge.[22]

A jury trial on the amended charge was held in April 2001. At the trial, Mr. Meyer testified that Williams never paid the Promissory Note and that he still owed its entire principal plus interest.[23] Mr. Meyer "intentionally concealed" from the jury that the debt represented by the Promissory Note had been discharged.[24] Williams's own counsel did not raise the issue of discharge either.[25] The district attorney asserted that the Promissory Note was a "security" under the Colorado Securities Act, and that Williams made a false statement to Meyer in obtaining the security, which constituted securities fraud, and that the 1997 Promissory Note was part of a "continuing fraud" dating back to 1990.[26] The jury found Williams guilty of fraud and other prohibited conduct in the offer and sale of securities beginning in 1990 and continuing through January 1997.[27] Williams was sentenced to sixteen years in prison and ordered to pay restitution in the amount of $83,032.19. The $6,000 loan was included in the calculation of the amount of restitution ordered.[28] At the time he filed his Complaint in 2009, Williams was still incarcerated pursuant to his sixteen year sentence, and approximately $1,400 had been seized from his prison account pursuant to the restitution order.[29]

Williams alleged (and we must deem true) that the "principal motivation of the above prosecution was to collect on the $9,000 discharged debt."[30] He also alleged that the Meyers "continue to knowingly and willingly violate the [Discharge] Injunction" by collecting restitution.[31]

In his Complaint, Williams sought the following relief from the bankruptcy court: (1) A declaration that debt represented by the Promissory Note has been discharged, a declaration that the restitution order is null and void, and a judgment against the Meyers in the amount they already collected from Williams, with interest;[32] and (2) a declaration that the Meyers are in willful contempt for violating the discharge injunction, and the imposition of fines, imprisonment and damages for willful contempt.[33]

22. *Id.* at 5, ¶¶ 21–22.

23. *Id.* at 5, ¶¶ 23, 25.

24. *Id.* at 5, ¶ 26.

25. *Id.* at 6, ¶ 31.

26. *Id.* at 6, ¶¶ 30, 34. In his Complaint, Williams insisted that he did not offer to sell Mr. Meyer a security when he executed the Promissory Note. Whether the Promissory Note was a security under Colorado law is a legal conclusion, however, and the Colorado district court apparently concluded that it was a security. Thus, we cannot deem it a fact that Williams did not offer to sell Mr. Meyer a security.

27. *Id.* at 6, ¶ 35.

28. *Id.* at 6–7, ¶ 37. Williams alleged that the restitution order only included the $6,000 loan plus interest, not the full amount of the

$9,000 Promissory Note. Again, he does not explain the discrepancy between the amount of the loan and the amount of the note or why only $6,000 of the $9,000 note was included in the restitution calculation.

29. *Id.* at 7, ¶ 38.

30. *Id.* at 6, ¶ 29.

31. *Id.* at 7, ¶ 39.

32. *Id.* at 7, ¶¶ 40–42.

33. *Id.* at 7–9, ¶¶ 43–55. As noted above, Williams also sued the Colorado district court and the trial judge, seeking to "enjoin state courts [sic] judgment and sentence" on account of the "bad faith prosecution" (*id.* at 9), but because Williams does not challenge the bankruptcy court's *sua sponte* dismissal of that claim, we need not address whether the Complaint states a claim for such relief.

On October 23, 2009, the Meyers filed a motion to dismiss the Complaint, contending that Williams failed to state a claim against them.[34] Among other arguments, the Meyers asserted that a restitution obligation is not dischargeable, and that Williams's conviction and sentence is *res judicata* as to the nature of the debt being collected by the Meyers.[35]

Williams objected to the motion to dismiss, arguing that initiating the criminal complaint was an act by the Meyers to collect a discharged debt, that the entire criminal proceeding constituted a "bad faith" prosecution, and that if the bankruptcy court was inclined to grant the motion to dismiss, Williams should be given an opportunity to amend his Complaint.[36]

The bankruptcy court granted the motion to dismiss, relying on the Tenth Circuit case of *Paul v. Iglehart (In re Paul)*[37] in determining the legal standard for stating a cause of action for violation of the discharge injunction. Applying the *Paul* case, the bankruptcy court concluded that Williams failed to allege facts to support the allegation that the Meyers' conduct had the "'practical, concrete effect of coercing payment of a discharged debt.' The Debtor has certainly alleged that [the Meyers'] actions have resulted in coerced payments of restitution to [them], but there is no allegation of coerced payment of the discharged debt. The discharged pre-petition debt and the restitution obli-

gation, while related, are not the same obligation."[38] Williams timely filed a Notice of Appeal.

## IV. DISCUSSION

### A. *Establishing and collecting restitution does not violate the discharge injunction*

A discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727."[39] The discharge also "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor."[40]

Whether Williams stated a claim to void the restitution order under § 524(a)(1)[41] or a claim for discharge violation against the Meyers under § 524(a)(2) for making a criminal complaint, participating in the prosecution of the criminal complaint and collecting restitution turns on the application of § 523(a)(7) as that statute has been interpreted by the United States Supreme Court and the Tenth Circuit. As hereinafter explained, both courts have concluded that § 523(a)(7) excepts from discharge a restitution obligation entered after a criminal conviction.

 The relevant portion of § 523(a)(7) provides that a discharge does

---

**34.** *Motion to Dismiss Under Fed. R.B.P. 7012(b),* App. Ex. C.

**35.** *Id.* at 2, ¶¶ 4–5.

**36.** *Williams [sic] Objection to Defendant Meyer's [sic] Motion to Dismiss,* App. Ex. D.

**37.** 534 F.3d 1303 (10th Cir.2008).

**38.** *Order Granting Motion to Dismiss,* App. Ex. A, at 4 (quoting *id.* at 1308).

**39.** 11 U.S.C. § 524(a)(1).

**40.** 11 U.S.C. § 524(a)(2).

**41.** Unless otherwise indicated, all statutory references herein are to sections of the Bankruptcy Code, Title 11 of the United States Code.

not discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." [42] As noted by the bankruptcy court, a debt arising from a criminal sanction is distinct from a debt arising from a contract (*i.e.*, the Promissory Note in this case) or a debt arising from a tort (*i.e.*, the civil fraud action the Meyers might have brought under § 523(a)(2) or state law). In this case, it is clear that the Promissory Note debt was a prepetition debt because it arose from a prepetition consensual transaction between Williams and Meyer, and that it was discharged. Although less obvious, the restitution claim also arose prepetition, *i.e.*, at the time the conduct underlying the restitution claim was committed, and therefore the restitution claim was a separate contingent, unliquidated, prepetition claim.[43] Because § 523(a)(7) is self-executing—that is, it does not require either party to obtain a judgment declaring the debt excepted from discharge—the State of Colorado's right to impose restitution as part of a sentence upon conviction of a prepetition crime (and the Meyers' right to benefit from such restitution) was automatically excepted from Williams's discharge under § 523(a)(7). Accordingly, the post-discharge entry of the restitution order did not violate Williams's discharge and therefore is not void under § 524(a)(1). Further, the Meyers did not violate the discharge injunction by accepting the benefits of the undischarged restitution obligation that was imposed as a part of Williams's sentence.

◼ While arguably a more difficult issue, we further conclude that the Meyers' act in reporting the crime of securities fraud to the district attorney did not constitute "willful contempt" of the discharge injunction. Generally, the act of reporting a crime does not violate the discharge injunction unless the report is unsubstantiated and frivolous and designed to coerce payment of a discharged debt. Williams was actually convicted of the crime, and that conviction has not been overturned. The conviction itself established "beyond a reasonable doubt" that the crime the Meyers reported was not an attempt to coerce payment by assertion of an unsubstantiated or frivolous charge. Even if the Meyers were motivated to initiate the prosecution in order to benefit from any potential restitution order, because the State's restitution claim survived the discharge, the Meyers' participation in establishing such an order did not violate Williams's discharge.

B. *The rationale for excepting criminal restitution debts from discharge under § 523(a)(7)*

◼ In 1986, the United States Supreme Court established that criminal restitution orders are excepted from discharge under § 523(a)(7) in the case of *Kelly v. Robinson*.[44] In *Kelly*, a restitution order was entered prior to the debtor's bankruptcy, and the issue was whether the debt arising from the restitution

---

42. 11 U.S.C. § 523(a)(7).

43. A "claim" can exist under the Bankruptcy Code before a right to payment exists under state law. A claim arises "at the time the Debtor committed the conduct on which the Claim is based." *In re Parker*, 264 B.R. 685, 696 (10th Cir. BAP 2001), *aff'd*, 313 F.3d 1267 (10th Cir.2002). *See also O'Malley v. Rarer (In re O'Malley)*, 90 B.R. 417, 421

(Bankr.D.Minn.1988) (postpetition restitution order imposed on account of a prepetition crime constituted the liquidation of a prepetition claim that was excepted from discharge under § 523(a)(7)).

44. 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

order had been discharged. The restitution order was imposed in connection with the debtor's conviction for welfare fraud.[45] As a condition of probation, the debtor was ordered to pay restitution to the State of Connecticut Office of Probation, which arguably would compensate the State for its loss caused by the debtor's fraud.[46] The State, having notice of the bankruptcy, did not seek to except from discharge the debt arising from the restitution order under § 523(a)(2), (4), or (6). Believing that the debt had been discharged, the debtor stopped paying restitution.[47] The State, however, took the position that the debt had been automatically excepted from discharge under § 523(a)(7).[48]

The debtor filed an action seeking a declaration that the restitution obligation had been discharged and an injunction to prevent the State from enforcing the restitution order, which the bankruptcy court denied.[49] On appeal, the District Court agreed with the bankruptcy court, but the Second Circuit reversed, concluding that restitution obligations were not excepted from discharge under § 523(a)(7).[50] The matter was appealed to the Supreme Court.

Even though § 523(a)(7) on its face does not except from discharge a "fine, penalty, or forfeiture" that is "compensation for actual pecuniary loss," which seems to accurately describe a criminal restitution obligation, the Supreme Court concluded that in enacting § 523(a)(7) as part of the 1978 Bankruptcy Code (the "Code"), Congress could not have intended to render restitution obligations dischargeable, because it was well settled in pre-Code case law that restitution was *not* dischargeable.[51] Without a specific expression from Congress that it intended to change the federal judiciary's historical aversion to altering state criminal sentences in bankruptcy (or in other civil cases, except for Constitutionally and statutorily authorized *habeas corpus* proceedings), the Supreme Court concluded that pre-Code case law on that issue had not been superseded. "Our interpretation of the Code ... must reflect the basis for this judicial exception, a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." [52]

Requiring a representative of the State to appear in bankruptcy court to seek an exception to discharge under § 523(a)(2), (4), or (6) in order to defend a portion of its criminal sentence was deemed burdensome, duplicative, and unseemly by the Court.[53] Moreover, because not all restitution debts fell into one of those discharge exceptions, some restitution obligations (to victims of criminal fraud, for example) could be determined non-dischargeable, while others (restitution to families of victims of negligent homicide, for instance) would be discharged.[54]

The Supreme Court further concluded that not excepting restitution orders from discharge "would hamper the flexibility of

---

45. *Id.* at 38–39, 107 S.Ct. 353.

46. *Id.* at 39, 107 S.Ct. 353.

47. *Id.* at 39–40, 107 S.Ct. 353.

48. *Id.*

49. *Id.* at 40–42, 107 S.Ct. 353.

50. *Id.*

51. *Id.* at 43–47, 107 S.Ct. 353.

52. *Id.* at 47, 107 S.Ct. 353.

53. *Id.* at 48 and n. 8, 107 S.Ct. 353.

54. *Id.* at 48–49, 107 S.Ct. 353.

state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems."[55]

> Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.[56]

"In light of the established state of the law," and further based on federalism and policy considerations, the Supreme Court concluded that § 523(a)(7) simply could not be read to exclude restitution obligations from its scope.[57] Section 523(a)(7) clearly renders fines and penalties non-dischargeable and restitution could easily be considered a fine or penalty. The harder question was whether the requirement that the fine or penalty be payable "to and for the benefit of a governmental unit" and "not compensation for actual pecuniary loss" excluded criminal restitution from the scope of § 523(a)(7).[58] The Court acknowledged that "restitution is forwarded to the victim, and may be calculated by reference to the amount of harm the offender has caused,"[59] but concluded—

> [N]either of the qualifying clauses of § 523(a)(7) allows the discharge of a criminal judgment that takes the form of restitution. The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution..... "Unlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose."[60]

Accordingly, the Supreme Court held that "restitution orders [fall] within the meaning of § 523(a)(7)."[61]

---

55. *Id.* at 49, 107 S.Ct. 353.

56. *Id.* at 49 n. 10, 107 S.Ct. 353.

57. *Id.* at 50–51, 107 S.Ct. 353.

58. *Id.* at 51–52, 107 S.Ct. 353 (internal quotation marks omitted).

59. *Id.* at 52, 107 S.Ct. 353.

60. *Id.* (quoting *Pellegrino v. Div. of Crim. Justice (In re Pellegrino)*, 42 B.R. 129, 133 (Bankr.D.Conn.1984)).

61. *Id.* at 53, 107 S.Ct. 353. In *Kelly*, the Supreme Court did not address an alternative argument presented by the debtor in the case—that restitution obligations did not fall within the bankruptcy definition of "claim" or "debt." *Id.* at 50, 107 S.Ct. 353. In a later case, *Penn. Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), the Supreme Court concluded that a restitution obligation constituted a "liability on a claim" and therefore was a "debt" under § 101 of the Bankruptcy Code.

In *Davenport*, the issue was whether a criminal restitution obligation was subject to the Chapter 13 "superdischarge" when the debtor completed payments on a Chapter 13 plan. Because § 1328(a) did not exclude such debts from a Chapter 13 discharge at that time, the Court held the debt to be dischargeable. *Id.*

In 2007, the Tenth Circuit Court of Appeals held that a restitution obligation imposed as part of a criminal sentence is not dischargeable, even if the restitution obligation is payable directly to the crime victim. In *In re Troff*,[62] the Tenth Circuit acknowledged that the portion of the *Kelly* opinion that concluded that criminal restitution is imposed "to and for the benefit of a governmental unit," and not for the benefit of the victim, was not necessary to its holding because the defrauded victim in *Kelly* was a governmental unit (*i.e.*, the State of Connecticut) and therefore constituted dicta.[63] However, because, among other reasons, that dicta had been relied upon by Congress and state courts (in sentencing) for over twenty years, the Tenth Circuit concluded that even a restitution obligation payable *directly* to the

crime victim (rather than initially to the State) was non-dischargeable under § 523(a)(7).[64]

C. *Application of* Kelly *and* Troff *to post-discharge criminal proceedings*

 Admittedly, the allegations in Williams's Complaint place this appeal in a different posture than the *Kelly* and *Troff* appeals. The first distinction is that the restitution order against Williams was not entered prepetition and therefore was not in existence when the discharge order was entered. For the purpose of determining whether restitution is dischargeable, it does not matter whether a prepetition crime is discovered and prosecuted before or after the criminal defendant files bankruptcy, however.[65]

---

at 564, 110 S.Ct. 2126. Reacting to *Davenport*, Congress amended § 1328(a) to except restitution and criminal fines from discharge in Chapter 13 cases.

Thereafter in another case, the Supreme Court acknowledged that part of *Davenport's* holding had been statutorily overruled. But the Court specifically reaffirmed *Davenport's* holding that criminal restitution is a "liability on a claim" and therefore is a "debt" of the debtor in bankruptcy. *See Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

> [W]e held in *Davenport* that restitution orders imposed as a condition of probation in state criminal proceedings were 'claims' dischargeable in a Chapter 13 reorganization. Congress subsequently overruled the result in *Davenport*. *See* Criminal Victims Protection Act of 1990. It did so, however, by expressly withdrawing the Bankruptcy Court's power to discharge restitution orders under 11 U.S.C. § 1328(a), not by restricting the scope of, or otherwise amending the definition of "claim" under § 101(5).

*Id.* at 83 n. 4, 111 S.Ct. 2150 (citations omitted).

**62.** 488 F.3d 1237 (10th Cir.2007).

**63.** *Id.* at 1240–41.

**64.** *Id.* at 1242–43. The concurring opinion in *Troff* noted that the Supreme Court ignored the plain meaning of § 523(a)(7) in *Kelly*, and thus eviscerated two of the three elements of that statute, at least as they applied to criminal restitution obligations. *Troff*, 488 F.3d at 1243. The concurrence observed, however, that the Tenth Circuit was in no position to depart from *Kelly* and reinterpret the statute under the plain meaning doctrine. *Id.*

**65.** *See United States v. Vetter*, 895 F.2d 456, 459 (8th Cir.1990) (restitution orders are excepted from discharge regardless of whether they are entered before or after the bankruptcy was commenced); *United States v. Alexander*, 743 F.2d 472, 480 (7th Cir.1984) (defendant's prior bankruptcy did not preclude entry of restitution order for creditors' losses as part of sentence); *United States v. Carson*, 669 F.2d 216 (5th Cir.1982); *In re McMullen*, 189 B.R. 402, 409–10 (Bankr. E.D.Mich.1995) (although prior bankruptcy discharge barred creditor's civil enforcement of debt, it did not preclude the State from prosecuting debtor with the objective of obtaining restitution to creditor whose debt was discharged); *O'Malley v. Rarer (In re O'Malley)*, 90 B.R. 417, 421 (Bankr.D.Minn.1988) (claim for restitution for prepetition crime was not discharged). *But see Daulton v. Caldwell (In re Daulton)*, 966 F.2d 1025,

The Fifth Circuit Court of Appeals recognized that a criminal defendant's prior bankruptcy discharge of a debt did not prevent the court in the criminal proceeding from ordering restitution to holders of discharged debt. In *United States v. Pepper*, the defendant, Pepper, defrauded investors in 1989, and in 1991, he filed bankruptcy and obtained a discharge of "at least thirteen loans that investors had made to him."[66] Thereafter, he was charged, prosecuted, and convicted of mail and wire fraud, and money laundering.[67] Pepper was sentenced to over six years in prison and three years of supervised release, and ordered to pay $155,560 in restitution to the victims of his crimes.[68] On appeal, he argued that the restitution order should be vacated to the extent that it required him to pay restitution to the victims whose debts were discharged.[69] The Fifth Circuit denied such relief, stating—

> Generally, a bankruptcy proceeding and a criminal prosecution are fundamentally different proceedings, both in purpose and procedure, and the causes of action resolved by each are totally different. The pursuit of one proceeding will seldom resolve the other. As such, we do not believe that a bankruptcy discharge has any effect on the district court's power to order restitution in a criminal case [citing *Kelly v. Robinson*, 479 U.S. 36, 50, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) ].[70]

The court continued—

> In *United States v. Carson*, 669 F.2d 216 (5th Cir.1982), the district court had

ordered restitution as a condition of parole. The defendant had already obtained a discharge for the debt of those people who were to be compensated. The defendant argued that the discharge restricted the district court from ordering restitution. The Court rejected the argument for two reasons. Primarily, the Court reasoned that making restitution was consistent with the spirit of probation as offering a[n] offender a chance to rehabilitate himself. *Id.* at 217–18.

Secondly, the Court held that although a bankruptcy discharge extinguishes a defendant's liability, it does not extinguish the losses that the victim suffered. *Id.* at 217. The Court determined that restitution seeks to compensate for this loss. *Id.* It stated that the defendant does not "offer any reason to restrict the losses for which restitution is authorized to those for which the aggrieved party retains a right of action." *Id.*

Similarly, in this case, Pepper's bankruptcy discharge does nothing to relieve the loss suffered by the victims of his scheme. Therefore, as in *Carson*, we hold that a bankruptcy discharge does not limit a district court's power to order restitution in a criminal case.[71]

■ In Williams's case, the crime that resulted in the restitution order was committed during the period of 1990 through 1997—all prepetition.[72] Even though the

---

1028 (6th Cir.1992) (discharge did not preclude criminal prosecution on complaint of creditor; because prosecutor was not urging restitution as part of the punishment, bankruptcy court did not err in refusing to enjoin the prosecution).

**66.** 51 F.3d 469, 471 (5th Cir.1995).

**67.** *Id.* at 471–72.

**68.** *Id.* at 472.

**69.** *Id.* at 473.

**70.** *Id.* at 473–74 (citations omitted).

**71.** *Id.* at 474.

**72.** *See In re Parker*, 313 F.3d 1267, 1269 (10th Cir.2002) (claim arises when the debtor committed the "conduct giving rise to the claim").

district attorney may not have been aware of the crime at the time Williams filed his Chapter 7 petition, the debt represented by the potential restitution obligation was a prepetition claim. Under *Kelly* and *Troff*, and as illustrated by *Pepper*, the State of Colorado's right to impose restitution as a penal sanction was a contingent, unliquidated claim, separate and distinct from Mr. Meyer's claim on the Promissory Note, and the restitution claim was automatically excepted from Williams's discharge under § 523(a)(7).[73]

### D. *Public policy of encouraging crime victims to report criminal conduct*

A second distinction between this case and *Kelly* and *Troff* is that the Meyers went to the district attorney and filed a criminal complaint based on the non-payment of the Promissory Note (and non-performance of other investments) with knowledge that Williams received a discharge of the Promissory Note, whereas the creditors in *Kelly* and *Troff* did nothing after the discharge was entered to establish the restitution order. In *Kelly* and *Troff*, the debtor had already been convicted and sentenced before the bankruptcy had been filed.

■ A creditor who believes he was a victim of a crime perpetrated by the debt-

or is not necessarily enjoined by a debtor's discharge from reporting the crime, however.[74] Indeed, where complex financial transactions are involved, for instance, a creditor may not know that a crime has been committed until after the debtor obtains his discharge. If no one other than a creditor possesses information or evidence needed to report and prosecute a crime, should a debtor be immune from prosecution? Should creditors who are victims of a debtor's crimes be discouraged or deterred from reporting the crime by the threat of being sued for violating the discharge injunction? The Supreme Court concluded in *Kelly* that it is contrary to the public interest to allow a bankruptcy discharge to infringe on the State's prerogative in determining appropriate sanctions for criminal behavior. It is likewise contrary to the public interest to immunize a debtor from prosecution of a crime simply because he has already discharged all the debts related to the crime.

■ We recognize that there are instances where a creditor may in fact violate the discharge injunction by seeking criminal prosecution in bad faith in order to "coerce" the payment of a discharged debt. "Prosecution is in bad faith when the prosecuting authority has reason to doubt the validity of the charges."[75]

---

**73.** In his Complaint, Williams asserts that because the Meyers failed to file an action seeking to except the Promissory Note from discharge under § 523(a)(2), (4), or (6), they were precluded by the discharge from seeking restitution through the criminal proceeding. The right to impose restitution as a criminal sanction belongs to the State, however. The State of Colorado could not have filed a timely § 523(a)(2) action to preserve that claim from discharge because the Meyers did not report the crime until after Williams received his discharge. In any event, the Supreme Court concluded in *Kelly* that a State has no obligation to intervene in a bankruptcy proceeding to preserve and enforce the broad range of sentencing options available to deter

and rehabilitate a criminal defendant who happened to file bankruptcy. *Kelly v. Robinson*, 479 U.S. 36, 49, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

**74.** *But see In re Byrd*, 256 B.R. 246, 252 (Bankr.E.D.N.C.2000) (stating in dicta that once a debtor files a bankruptcy petition, a "disgruntled creditor may not then approach a governmental prosecutorial entity in order to prompt a criminal action to recover the debt").

**75.** *See, e.g., In re McMullen*, 189 B.R. 402, 411 (Bankr.E.D.Mich.1995) (internal quotation marks omitted).

Where "there is little likelihood of a guilty verdict being rendered, suspicions naturally arise that the prosecutor has some ulterior motive for proceeding with the case."[76] Further a "cozy relationship" between the creditor and the prosecutor might indicate that the motive of the prosecutor is solely to benefit the creditor, and not to vindicate the public interest.[77] Thus, the motivation of a creditor whose debt was discharged in seeking prosecution of the debtor may be relevant when it is possible to argue that no crime was committed, or that the process under which the debtor is being prosecuted is tainted by bad faith, or a criminal charge is threatened solely to coerce payment the discharged debt. In such cases, a debtor might be able to state a cause of action to *enjoin* the proceeding as a violation of the discharge injunction[78] and seek sanctions against the complaining creditor.

 We conclude, however, that after a debtor has been convicted of a crime, the motivation the creditor had in bringing the crime to the attention of the prosecuting authority is no longer relevant. A conviction constitutes a final, conclusive determination concerning the validity of the criminal charge. Unless and until a conviction is overturned, the prosecution was justified. Conviction of a financial crime perpetrated against a creditor establishes that the debtor committed a crime, and that the creditor was a crime victim with the right, and possibly an obligation, to report the crime. The debtor's bankruptcy discharge does not insulate the debtor from the consequences of criminal conduct, and public policy does not support subjecting an adjudicated crime victim to a discharge violation lawsuit by the debtor. Rather, public policy favors the identification of criminal conduct and the imposition of sanctions to punish and rehabilitate the perpetrator, and to deter future crime.

In this case, Williams was convicted by a jury of securities fraud in a Colorado state court after a full and fair opportunity to present his defense.[79] Neither the bankruptcy court nor this Court has the power to revisit or review that determination.[80]

76. *Id.*

77. *Id.*

78. *Id.* at 407–08 (debtor sought to enjoin prosecution for violating the contractor's trust fund statute (a felony), after two prior trials on the same charge resulted in a hung jury); *Starr v. Commonwealth (In re Starr)*, 147 B.R. 380, 382 n. 4 (Bankr.E.D.Va.1991) (motivation of creditor and prosecutor to collect debt through criminal process may be grounds to *enjoin* criminal proceeding, but only if the criminal action is brought in bad faith or for harassment).

79. Although Williams alleged that the prosecutor and Mr. Meyer "intentionally concealed" from the jury the fact that the "loan" to Mr. Meyer had been discharged, we cannot draw any inference from that non-disclosure that might be favorable to Williams's case. The loan's discharge was in no way relevant to Williams's guilt or innocence. A debtor is still guilty of larceny or embezzlement, for instance, even if the debt to the party whose property was stolen had been discharged.

Moreover, to the extent that Williams believed that discharge of his debt to Mr. Meyer was a fact relevant to the criminal proceeding, Williams had a full and fair opportunity to present evidence of his discharge, and did not do so.

80. After conviction, a debtor must use the appeal and post-conviction relief process to address any irregularity in the proceeding (the alleged prosecutorial misconduct, for instance). "[B]y operation of the doctrine of collateral estoppel, a valid criminal conviction acts as a bar to overturning that conviction in a civil damages suit." *Levine v. Kling*, 123 F.3d 580, 583 (7th Cir.1997). Thus, Williams is barred from arguing in the bankruptcy court that he is entitled to damages on the grounds that the Meyers and the prosecutor abused the criminal justice system to obtain an unjust conviction. *See also Allen v. McCurry*, 449 U.S. 90, 95–96, 101 S.Ct. 411,

The conviction and sentence conclusively establish that the criminal complaint made by the Meyers was not abusive, frivolous, or unsubstantiated. Moreover, the motivation of the Meyers in bringing the crime to the attention of the district attorney is simply not relevant at this point because the jury found that a crime had in fact been committed, and the judge and jury determined that the criminal behavior was egregious enough to warrant a sixteen year prison sentence and restitution to the Meyers for their losses. Therefore, under these circumstances, Williams's allegation that the Meyers maliciously sought prosecution of the crime solely in order to collect a discharged debt, even if true, does not state a claim for a violation of the discharge injunction.[81]

## V. CONCLUSION

■ "[B]ankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial overextension."[82] Because Williams was found guilty of offering and selling the Meyers

investments by fraud or other prohibited means, he is in no position to seek sanctions against the Meyers for bringing his crime to the attention of the district attorney. In addition, the Meyers do not violate the discharge injunction by accepting the benefit of the restitution ordered as part of Williams's sentence. Accordingly, Williams has not stated a cause of action against the Meyers for violating the discharge injunction. Further, under the facts of this case, any attempt to amend the Complaint to state a claim for violation of the discharge injunction would be futile. The bankruptcy court's order dismissing the Complaint is therefore AFFIRMED.

---

66 L.Ed.2d 308 (1980) (convicted felon could not assert a § 1983 claim for damages against police officers for illegal search and seizure where the state court in the criminal proceeding refused to suppress evidence based on same Fourth Amendment argument; federal courts must accord full faith and credit to state court proceedings under 28 U.S.C. § 1738).

81. In the *Paul* case, cited by the bankruptcy court, the Tenth Circuit noted that when evaluating whether the discharge has been violated, the creditor's actual state of mind is generally not relevant. Rather, "[t]he inquiry is objective; the question is whether the creditor's conduct had the practical, concrete effect of coercing payment of a discharged debt, and bad faith is not required." *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1308 (10th Cir. 2008). The Tenth Circuit recognized that the inverse is also true, however. "[I]f an act is

not in fact one to collect or enforce a prepetition debt, then whatever its faults, it is not a violation of the discharge, even though undertaken by the holder of a discharged debt." *Id.* at 1313 (internal quotation marks omitted).

Thus, even if the Meyers were initially motivated by animus toward Williams for his failure to repay the Promissory Note, their contact and cooperation with the district attorney has been vindicated by the securities fraud conviction. Their action did not coerce Williams to pay the discharged debt; instead it resulted in, among other things, the adjudication and liquidation of the State's prepetition, contingent—and undischarged—restitution claim.

82. *O'Malley v. Rarer (In re O'Malley)*, 90 B.R. 417, 419 (Bankr.D.Minn.1988) (quoting legislative history).